[No. G032634. Fourth Dist., Div. Three. Aug. 19, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
JOE BABY BURNELL, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 976.1(a), this opinion is certified for partial publication. The portions to be published follow.

## Counsel

A. M. Weisman, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Gil P. Gonzalez, David Delgado-Rucci and Garrett Beaumont, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**IKOLA, J.**—A jury found defendant Joe Baby Burnell guilty of attempted premeditated murder (Pen. Code, §§ 664, 187, subd. (a)) (count 1),[1] second degree robbery (§§ 211, 212.5, subd. (c), & 213, subd. (a)(2)) (count 2), unlawful taking or driving a vehicle (Veh. Code, § 10851, subd. (a)) (count 3), receiving stolen property (§ 496, subd. (a)) (count 4), mayhem (§ 203) (lesser included offense of count 6), and street terrorism (§ 186.22, subd. (a)) (count 9, renumbered count 7). The jury also found true allegations that defendant personally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)) (attached to counts 1, 2, and 6), and counts 1, 2, 3, 4, and 6 were committed for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further and assist in criminal conduct by gang members (§ 186.22, subd. (b)(1)). The defendant admitted allegations he had served a prior prison term (§ 667.5, subd. (b)), had a serious felony conviction (§ 667, subd. (a)(1)), and two strikes (§ 667, subds. (d) & (e)(2)).

Defendant was sentenced to an indeterminate prison term of life on count 1, with a minimum parole eligibility date of 45 years, to which was added a consecutive 25-years-to-life firearm enhancement, an enhanced consecutive 29-years-to-life prison term for count 3, and a consecutive 25-years-to-life prison term for street terrorism. To that was added five more years for the serious felony enhancement pursuant to section 667, subdivision (a)(1). Execution of all other sentences was stayed pursuant to section 654.

On appeal, defendant asserts: (1) he cannot be convicted of both taking and receiving the same vehicle; (2) he cannot be convicted of both attempted murder and mayhem; (3) counts 1, 2, 3, 4, and 6 are necessarily included offenses of the street terrorism conviction on count 7; (4) counsel was

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

ineffective for a variety of reasons; (5) the court committed several sentencing errors; (6) the street terrorism count and gang enhancements were not supported by substantial evidence; and (7) the 25-years-to-life firearm enhancements constitute cruel and unusual punishment. We reject all of defendant's contentions and affirm the judgment.

## FACTS

James Earhart was the owner and sole employee of a Garden Grove business known as Holly's Coin and Collectibles (Holly's Coin). On June 13, 2002, defendant entered the store and sold some coins to Earhart. As he was leaving, defendant told Earhart he had some more coins and asked if he could bring them back the next day. While defendant was in Holly's Coin, another Black man was seen walking the perimeter of the shopping center while still another waited for defendant in a silver Toyota.

At about 4:30 p.m. the next day, defendant returned in a stolen maroon GMC minivan in the company of Marquis Iben Alashanti and DeAngelo Clay. Defendant entered Holly's Coin. Alashanti entered a nearby store that had a view of Holly's Coin, but left after observing the store's employee watching television at the rear of the store. After Earhart finished with another customer, defendant approached the counter and laid out three rows of coins. As Earhart began looking at the coins, defendant came around the counter and grabbed Earhart from behind, put a gun to the back of his head, and said "I'm going to kill you, you mother fucker." Earhart struggled, but defendant put the gun to Earhart's right temple near the right eye and pulled the trigger. The bullet exited Earhart's left temple near the left eye. Earhart fell to the floor, still alert, but in pain and shock. He pretended he was dead, and felt someone go through his pockets. Earhart heard the sound of the buzzer on the store's security door, heard someone else come into the store, heard whispering, and then heard things being moved around in the direction of a corner safe. When Earhart heard the security door buzzer again, and it became silent in the store, he was able to crawl to the door, unlatch it, and crawl outside where he yelled for help. Earhart lost both eyes, and his senses of smell and taste.

Defendant and his accomplices took merchandise worth, by Earhart's estimate, $16,000 to $20,000, some currency, and some personal mortgage refinancing papers. The stolen maroon GMC minivan was recovered shortly after 8:00 o'clock that evening in a parking lot half a mile from Holly's Coin. The steering wheel was stained with blood and Earhart's refinancing papers

were found within the vehicle. Investigators also recovered a black plastic bag containing three duffle bags, black gloves, and a cardboard box. One of the duffle bags contained a small pry bar.

Clay's palm print was found on the front passenger door of the minivan. Alashanti's fingerprints were found on the black plastic bag recovered from the vehicle. Defendant's fingerprints were found on the same black plastic bag, the cardboard box, and Earhart's papers. Inside Holly's Coin's premises, defendant's fingerprints were found on the display case.

Deputy Sheriff William Pickett of the Los Angeles County Sheriff's Department testified as an expert on the 11 Deuce Hoover Crips gang (11 Deuce Hoover).[2] He opined 11 Deuce Hoover was a criminal street gang of about 160 members whose primary activities were narcotic sales, shootings, assaults with deadly weapons, murders, car thefts, residential burglaries and weapons violations, and that defendant was an active member of the 11 Deuce Hoover gang on June 14, 2002. Pickett based his opinion on defendant's tattoos, various field information cards generated in the course of several contacts with law enforcement in 1999, and his opinion defendant's tattoos were "earned," not "given." It was also Pickett's opinion that the Earhart robbery was committed for the benefit of, and in association with, both the Rolling 30's Harlem Crips (Rolling 30's) and the 11 Deuce Hoover gangs.

Officer Jamie Smerdel of the Los Angeles Police Department gave expert testimony about the Rolling 30's gang. Smerdel opined the Rolling 30's gang was an active criminal street gang whose primary activities were robberies, drive-by shootings, murders and attempted murders, carjacking, narcotics sales, and weapons violations. Smerdel also opined Alashanti was a member and an active participant in the Rolling 30's gang as of the date of the Earhart robbery, June 14, 2002. Smerdel based her opinion on Alashanti's admission of his membership in 1999 when a weapon was found in a car in which he was a passenger,[3] the numerous tattoos on Alashanti's body associating himself with the Rolling 30's, and contacts with police during investigations of criminal activities in 1990 and 1994.

Answering a hypothetical question based on facts in evidence, Smerdel opined the Earhart robbery was committed for the benefit of, and in association with both the Rolling 30's and the 11 Deuce Hoover gangs, and that an

---

[2] 11 Deuce Hoover is shorthand for 112th Street Hoover Crips.

[3] Alashanti also admitted membership in the Rolling 30's while being interrogated after his arrest in connection with the Earhart robbery.

alliance between the Rolling 30's and the 11 Deuce Hoovers had been affirmatively documented in August 2002, two months after the Earhart robbery. Specifically, Smerdel had learned the Rolling 30's, the 11 Deuce Hoovers, and Nothing But Trouble, a gang having its origins on Haldale Street, had formed an alliance called the Triple H (Thirties, Hoover, and Haldale).

## DISCUSSION

*The Dual Conviction Under Vehicle Code Section 10851 and Section 496\**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*The People Did Not Improperly "Splinter" Its Prosecution\**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Attempted Murder, Robbery, Vehicle Theft, Receiving Stolen Property, and Mayhem Are Not Necessarily Included Offenses of Street Terrorism*

Defendant next contends that counts 1 (attempted murder), 2 (robbery), 3 (vehicle theft), 4 (receiving stolen property), and 6 (mayhem) are necessarily included in the street terrorism offense and conviction of these counts must therefore be stricken. Defendant's argument is without merit.

■ "Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all elements of the lesser offense, such that the greater cannot be committed without also committing the lesser." (*People v. Birks* (1998) 19 Cal.4th 108, 117 [77 Cal.Rptr.2d 848, 960 P.2d 1073].) ■ Manifestly, the statutory elements of street terrorism do not include all elements of attempted murder, robbery, vehicle theft, receiving stolen property and mayhem. Section 186.22, subdivision (a) provides: "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished . . . ." Thus, utilizing the statutory elements, we see that one can be convicted of street terrorism without ever committing an attempted murder, a

---

\*See footnote, *ante*, page 938.

robbery, a vehicle theft, receiving stolen property, or mayhem. Promoting or furthering any felonious criminal conduct will do. Since the elements of the purportedly included offenses are not common to street terrorism, they are not necessarily included offenses under the statutory test.

Recognizing the inherent problem in using the statutory test to determine what constitutes a necessarily included offense of street terrorism, defendant bases his argument on the so-called pleadings test. Defendant begins by correctly quoting the allegations of the operative information: "On or about June 14, 2002, JOE BABY BURNELL, in violation of Section 186.22(a) of the Penal Code (STREET TERRORISM), a FELONY, did willfully, unlawfully and actively participate in a criminal street gang, to wit: 112TH STREET HOOVER CRIPS, with knowledge that its members engage in and have engaged in a pattern of criminal gang activity and did willfully promote, further and assist in Felony criminal conduct by gang members." The recitation of the street terrorism charge as alleged in the information defeats defendant's argument under the pleadings test. The allegation does *not* allege any particular felony that was promoted, furthered, or assisted, and specifically does not mention attempted murder, robbery, vehicle theft, receiving stolen property, or mayhem.

■ Defendant glosses over this problem and bases his argument on events occurring at trial, viz., the court's instructions to the jury, and the prosecutor's arguments, both of which referenced these five offenses as satisfying the necessary felonious conduct under the street terrorism charge. But the pleadings test does not permit the use of events at trial to add to the language of the information. (*People v. Ortega* (1998) 19 Cal.4th 686, 698 [80 Cal.Rptr.2d 489, 968 P.2d 48].) "There are several practical reasons for not considering the evidence adduced at trial in determining whether one offense is necessarily included within another. Limiting consideration to the elements of the offenses and the language of the accusatory pleading informs a defendant, prior to trial, of what included offenses he or she must be prepared to defend against. If the foregoing determination were to be based upon the evidence adduced at trial, a defendant would not know for certain, until each party had rested its respective case, the full range of offenses of which the defendant might be convicted. Basing the determination of whether an offense is necessarily included within another offense solely upon the elements of the offenses and the language of the accusatory pleading promotes consistency in application of the rule precluding multiple convictions of necessarily included offenses, and eases the burden on both the trial courts and the reviewing courts in applying that rule." (*Ibid.*) Limiting our review to the face of the information, as directed by *Ortega*, compels us to conclude the

offenses of attempted murder, robbery, vehicle theft, receiving stolen property, and mayhem are not necessarily included in the offense of street terrorism under either the statutory test or the pleadings test.

Defendant also argues the jury should have been instructed with CALJIC No. 17.03 to advise the jury that conviction of street terrorism was an alternative to conviction of attempted murder, robbery, vehicle theft, receiving stolen property, and mayhem. But having reached our conclusion that none of these offenses are necessarily included in the others, defendant's contention regarding the jury instruction must necessarily fail. These counts were not alternative. Defendant could lawfully be convicted of all six.

*Defense Counsel's Failure to Request Bifurcation of the Gang Count and Enhancements Caused No Prejudice to Defendant*

■ Defendant claims his trial counsel provided ineffective assistance by not asking the court to sever the trial of the street terrorism count and to bifurcate the gang enhancements.[5] "To establish ineffective assistance, defendant bears the burden of showing, first, that counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms. Second, a defendant must establish that, absent counsel's error, it is reasonably probable that the verdict would have been more favorable to him." (*People v. Hawkins* (1995) 10 Cal.4th 920, 940 [42 Cal.Rptr.2d 636, 897 P.2d 574]; see also *Strickland v. Washington* (1984) 466 U.S. 668, 687–694 [80 L.Ed.2d 674, 104 S.Ct. 2052].)

Defendant fails to sustain his burden under both prongs. Tellingly, defendant fails to cite any case in which the court found prejudicial error for joining the trial of a street terrorism charge with the trial of other offenses committed at the same time, and we have not found any. It appears highly unlikely a motion to sever would have been granted had it been made.

■ First, section 954 permitted the joinder. All of the crimes charged against defendant arose out of a single course of conduct. "An accusatory pleading may charge two or more different offenses connected together in their commission . . . ." (§ 954.) "The burden is on the party seeking severance to *clearly establish* that there is a substantial danger of prejudice requiring that the charges be separately tried." (*People v. Bean* (1988) 46 Cal.3d 919, 938 [251 Cal.Rptr. 467, 760 P.2d 996], italics added.)

---

[5] Actually, defendant confuses "severance" of a substantive count with "bifurcation" of an enhancement by arguing defendant's counsel should have moved to "bifurcate" both the street terrorism count and the gang enhancements attached to other counts.

Second, the factors the court would have considered had the motion to sever been made were these: "(1) would the evidence of the crimes be cross-admissible in separate trials; (2) are some of the charges unusually likely to inflame the jury against the defendant; (3) has a weak case been joined with a strong case or another weak case so that the total evidence on the joined charges may alter the outcome of some or all of the charged offenses; and (4) is any one of the charges a death penalty offense, or does joinder of the charges convert the matter into a capital case." (*People v. Marshall* (1997) 15 Cal.4th 1, 27–28 [61 Cal.Rptr.2d 84, 931 P.2d 262].) The fourth factor is not relevant to the instant case. And while the gang evidence may not have been admissible against defendant if the street terrorism count had been severed and the gang enhancements bifurcated, it was nevertheless relevant to the charges against Alashanti in which the prosecution proceeded on aiding and abetting and conspiracy theories. (*People v. Superior Court (Quinteros)* (1993) 13 Cal.App.4th 12, 20 [16 Cal.Rptr.2d 462] ["common gang membership may be part of circumstantial evidence supporting the inference of a conspiracy"].) Thus to entirely eliminate the gang evidence would have required a severance not only of the street terrorism count and the bifurcation of the gang enhancements. A severance of the entire case against Alashanti would also have been required. "The benefits to the state of joinder [are] significant. Foremost among these benefits is the conservation of judicial resources and public funds. A unitary trial requires a single court-room, judge, and court attaches. Only one group of jurors need serve, and the expenditure of time for jury voir dire is greatly reduced over that required were the cases separately tried. In addition, the public is served by the reduced delay on disposition of criminal charges both in trial and through the appellate process. These considerations outweigh the minimal likelihood of prejudice through joinder of the charges in this case." (*People v. Bean, supra,* 46 Cal.3d at p. 939.) Given these considerations, we believe it unlikely the court would have granted a motion to sever the gang evidence had it been made.

Moreover, with respect to the third factor—the coupling of a weak case with a strong case—the strong case here was the robbery and attempted murder of Earhart. The impact of the relatively benign gang evidence paled in comparison to the direct evidence of the depraved, senseless, and brutal acts committed by defendant. If anything, the brutal nature of the attempted murder, robbery, and mayhem would more likely prejudice defendant in their consideration of the street terrorism charge. But a separate prosecution of street terrorism would have required proof defendant "willfully, promote[d],

further[ed], or assist[ed] . . . felonious criminal conduct . . . ." (§ 186.22, subd. (a).) And to establish this element of street terrorism, the People relied upon the crimes charged in the other counts of the information. Thus, defendant would not have benefited by having the street terrorism charge tried separately.

If a severance of the street terrorism charge was highly unlikely, the bifurcation of the gang enhancements was even more unlikely. Virtually all of the gang evidence which would be admissible on the gang enhancements would also be admissible on the street terrorism charge. Thus the jury would hear the evidence during trial of the substantive gang offense. Further, "[a]ny evidence admitted solely to prove the gang enhancement was not so minimally probative on the charged offense, and so inflammatory in comparison, that it threatened to sway the jury to convict regardless of defendants' actual guilt." (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1051 [16 Cal.Rptr.3d 880, 94 P.3d 1080].) Accordingly, a consideration of the above factors weigh against the probability the court would have granted a severance and bifurcation motion in this case. We cannot say counsel's failure to make these motions fell "below an objective standard of reasonableness under prevailing professional norms." (*People v. Hawkins, supra*, 10 Cal.4th at p. 940.)

Finally, even were we to assume counsel was deficient, there was no prejudice. The evidence against defendant was overwhelming. Without again reciting the evidence in detail, suffice it to note that defendant's fingerprints were found both on the display case inside Holly's Coin and on Earhart's personal papers found inside the stolen van. It is not reasonably probable the verdict would have been more favorable to defendant had a motion to sever and bifurcate been successful.

*Counsel Was Not Deficient For Failing to Object to "Gang Profile" Evidence**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Defendant's Sixth Amendment Right to a Jury Trial Was Not Violated**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 938.

## DISPOSITION

The judgment is affirmed.

O'Leary, Acting P. J., and Aronson, J., concurred.

A petition for a rehearing was denied September 7, 2005, and on September 15, 2005, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied December 21, 2005.