Filed 9/5/14  P. v. Benitez CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G048299 |
| v. | (Super. Ct. No. 12CF0200) |
| JUAN JUNIOR BENITEZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, James A. Stotler, Judge.  Affirmed.

Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

Defendant Juan Junior Benitez was convicted of robbery and assault in connection with two different events. On appeal, he argues the admission of expert opinion testimony and lay opinion testimony prejudicially harmed him. We disagree.

Defendant also argues the trial court erred by denying his motion to sever the trial of the robbery-related charges from the assault-related charges. We conclude the trial court did not err in denying the motion, and the joinder of the two sets of crimes for trial did not have a substantial, injurious effect on the jury's verdict.

Therefore, we affirm.

## STATEMENT OF FACTS

### The November 2011 Incident

In November 2011, Angel Balladares and two of his friends were hanging out in an area behind their school in the City of Orange. Defendant drove up in a blue Scion; he had one male passenger in his car. They asked Balladares and his friends, "[i]f we were from somewhere," which Balladares believed meant if they were in a gang. Balladares responded, "we don't claim." One of Balladares's friends, nicknamed "Trooper," told defendant he was from "Criminals." Trooper called defendant and defendant's friend "cravers" (a term of disrespect toward the Orange Varrio Cypress (OVC) criminal street gang). Defendant exited the car, but got back in and drove away when Balladares's other friend picked up a rock; the friend threw the rock at defendant's car as defendant drove off.

### The Ralphs Grocery Store Robbery

About 6:30 p.m. on January 21, 2012, two loss prevention agents watched defendant exit a Ralphs grocery store without paying for $66.73 in merchandise. One

2

agent confronted defendant on the sidewalk in front of the store. The agent identified himself and asked defendant to return to the store. Defendant dropped some of the items and pushed the agent backwards. The other agent seized defendant's arm, but defendant used the fist of his free hand to strike the first agent on the head. Defendant attempted to run to the parking lot, but he was restrained by the agents.

*The February 2012 Assault*

About 9:00 a.m. on February 16, 2012, Balladares was in an alley outside a friend's apartment. A blue Scion driven by defendant pulled into the alley; Balladares recognized the car from the incident the previous November. Defendant and a passenger exited the car and asked Balladares where he was from. Balladares responded that he "wasn't from nowhere." Defendant told Balladares that defendant was from OVC. Another passenger in the car was wearing black clothing, and a black-and-orange Baltimore Orioles baseball cap with the letters "OVC" stitched on it.

As Balladares tried to walk away, one of the passengers from the Scion struck him in the back with a miniature baseball bat. Defendant and the two passengers beat and kicked Balladares, then got back into the Scion and drove away.

*The Investigation*

On the evening of February 16, Balladares was interviewed and shown photographic lineups. Balladares identified both passengers from the blue Scion after reviewing the photographic lineups. He was not able to identify a photograph of defendant in the initial photographic lineups. Later, Balladares was shown another photographic lineup; Balladares identified defendant as the Scion's driver, who had participated in the attack against him earlier that day.

Balladares remembered the Scion's license plate had been detached from the front bumper and placed inside the front windshield, and there was a white scratch along the front passenger side of the car. A few days after the incident, a police officer

3

went to defendant's home, where he took a photograph of a blue Scion, which had damage along the passenger side door, parked in front of the house. The following day, an officer searched the vehicle. Inside, he found a license plate wedged between the console and the passenger seat. At trial, Balladares identified the Scion in the police photograph as the same one he had seen defendant driving on February 16.

Defendant's mother testified that she owned a damaged blue Scion. She also testified that she had loaned her vehicle to defendant on the morning of February 16, 2012, so he could attend a job interview.

Defendant's neighbor, Ami Farrell, testified she had seen defendant in front of his apartment about 10:00 a.m. on February 16. Defendant was wearing a dress shirt and dress pants. He returned at 12:00 p.m., dressed in the same clothes. In February 2012, Farrell had been undergoing radiation and chemotherapy to treat cancer. She acknowledged the medication could have distorted her sense of time and she might not have seen defendant until as late as 10:30 a.m.

*The Gang Expert's Testimony*

Detective Miguel Cuenca testified as the prosecution's gang expert. Cuenca testified that OVC was a criminal street gang; its primary rival gang was the Orange County Criminals. Cuenca opined that defendant was an active member of OVC on February 16, 2012, based on Cuenca's personal contacts with defendant; review of California Street Terrorism Enforcement and Prevention Act (Pen. Code, § 186.20 et seq.) (STEP) notices issued to defendant, field interview cards generated about defendant, and references to defendant in multiple police reports; and discussions about defendant with other active OVC gang members. Cuenca also opined that Diego Osorio, who was identified as one of the passengers in the Scion and who participated in the assault on Balladares, was also an active member of OVC on February 16, 2012.

4

PROCEDURAL HISTORY

Defendant was charged in an amended information with commercial burglary (Pen. Code, §§ 459, 460, subd. (b)) (count 1) and robbery (*id.*, §§ 211, 212.5, subd. (c)) (count 2), in connection with the January 21, 2012 incident at the Ralphs grocery store. Defendant was also charged with assault with a deadly weapon (*id.*, § 245, subd. (a)(1)) (count 3) and assault by means of force likely to produce great bodily injury (*id.*, § 245, subd. (a)(4)) (count 4), in connection with the February 16, 2012 incident. The amended information alleged counts 3 and 4 were committed for the benefit, at the direction of, or in association with a criminal street gang (*id.*, § 186.22, subd. (b)(1)), and while defendant was released from custody on bail for a previous felony charge (*id.*, § 12022.1, subd. (b)).

Before trial, defendant moved to sever counts 1 and 2 from counts 3 and 4. The trial court denied the motion to sever, but gave a limiting instruction informing the jury that the gang evidence was only relevant to counts 3 and 4. The court also instructed the jury, "[e]ach of the counts charged in this case is a separate crime" and it "must consider each count separately."

The jury convicted defendant of robbery (count 2) and assault by means of force likely to produce great bodily injury (count 4). The jury also found the gang sentencing enhancement allegation true. The jury did not reach verdicts on the charges of burglary (count 1) and assault with a deadly weapon (count 3); the court declared a mistrial on those counts, and ultimately dismissed those counts on the prosecution's motion. The trial court conducted a bench trial of the crime-bail-crime sentencing enhancement allegation, and found it true.

Defendant was sentenced to six years in state prison: three years for the assault conviction, two years for the gang enhancement, and one year for the robbery conviction. The trial court struck the crime-bail-crime enhancement for the purpose of sentencing. Defendant timely appealed.

5

I.

*GANG EXPERT'S OPINION TESTIMONY*

Defendant argues his due process rights were violated when the prosecution's gang expert was permitted to express an opinion about defendant's guilt and specific intent. We review the trial court's ruling admitting the gang expert's testimony for abuse of discretion. (*People v. Waidla* (2000) 22 Cal.4th 690, 717-718.)

An expert witness may render an opinion based on facts presented "'in a hypothetical question that asks the expert to assume their truth.' [Citation.]" (*People v. Gardeley* (1996) 14 Cal.4th 605, 618.) Hypothetical questions that track the evidence of the case in only a "'thinly disguised'" manner are permissible. (*People v. Vang* (2011) 52 Cal.4th 1038, 1045.) Defendant contends that in this case, the facts of the hypothetical presented to the expert were not disguised at all, but merely recited the evidence and asked the expert to opine on defendant's guilt and intent.

The prosecution's hypothetical question used the names of defendant and one of the passengers in the Scion when asking the gang expert witness to opine on whether the attack on Balladares was gang related. The hypothetical began as follows: "Now let me ask you a hypothetical, and for the purposes of this hypothetical, assume that everything that I'm going to describe to you is factually accurate. So let's assume that Mr. Benitez based on your opinion, active participant of Orange Varrio Cypress on February 16th with another active participant of Orange Varrio Cypress, Diego Osorio, in the City of Orange in the area that I showed you in People's number 3, which is within gang territory claimed by Orange Varrio Cypress. That Mr. Benitez is driving a car, enters an alley in that area, sees an individual that he has contacted before." The hypothetical continued on, consistently using the names of defendant and Osorio. The questions, however, were clearly phrased as hypotheticals. The jury was properly instructed regarding the weight to give the expert's opinion testimony. Specifically, the

6

jury was instructed: "An expert witness may be asked a hypothetical question. A hypothetical question asks the witness to assume certain facts are true and to give an opinion based on the assumed facts. It is up to you to decide whether an assumed fact has been proved. If you conclude that an assumed fact is not true, consider the effect of the expert's reliance on that fact in evaluating the expert's opinion."

While the form of the prosecutor's hypothetical questions was not ideal, they were still hypothetical questions, and there is little practical distinction between a hypothetical question based directly on the evidence in the case that refers to defendant by name rather than by a pseudonym. "It is required, not prohibited, that hypothetical questions be based on the evidence. The questioner is not required to disguise the fact the questions are based on that evidence." (*People v. Vang*, *supra*, 52 Cal.4th at p. 1041.)

Further, the jury was properly instructed that the value of the expert's opinion was dependent on whether the jury found true the facts supporting it. The trial court did not abuse its discretion in permitting the form of the prosecutor's hypothetical questions to the gang expert witness.

II.

*CONFRONTATION CLAUSE*

Defendant next argues that his rights under the confrontation clause were violated because the prosecution's gang expert witness was permitted to base his opinion on hearsay evidence. In *Crawford v. Washington* (2004) 541 U.S. 36, 59 (*Crawford*), the United States Supreme Court held that "the admission of testimonial out-of-court statements violates a defendant's confrontation rights unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination" (*People v. Valadez* (2013) 220 Cal.App.4th 16, 30). In *Williams v. Illinois* (2012) 567 U.S. ___ [132 S.Ct. 2221], the Supreme Court considered whether a laboratory expert's testimony—that a DNA report from another case, which was not admitted into evidence, matched the defendant's DNA sample—violated the confrontation clause. Four justices

7

concluded the report was not offered for its truth, and was not testimonial. (*Id.* at p. ___ [132 S.Ct. at p. 2228] (plur. opn. of Alito, J.).) The five other justices found the report was offered for its truth (*id.* at p. ___ [132 S.Ct. at pp. 2257, 2260] (conc. opn. of Thomas, J.); *id.* at p. ___ [132 S.Ct. at p. 2268] (dis. opn. of Kagan, J.)), but one of those justices found it was not testimonial (*id.* at p. ___ [132 S.Ct. at p. 2271] (dis. opn. of Kagan, J.)).

In *People v. Dungo* (2012) 55 Cal.4th 608, 621, a majority of the California Supreme Court held that statements in an autopsy report, on which a testifying forensic pathologist based his opinion, were not testimonial, and therefore were not subject to the Confrontation Clause. Both the concurring opinion by Justice Werdegar and the dissenting opinion by Justice Corrigan, which together garnered a total of six votes, concluded that the statements in the autopsy report were offered for their truth. (*Id.* at p. 627 (conc. opn. of Werdegar, J.); *id.* at p. 635, fn. 3 (dis. opn. of Corrigan, J.).)

We cannot determine whether the out-of-court statements complained of in this case were offered for their truth because there is no evidence of what these statements were. Cuenca testified he relied on certain *types* of information in rendering his opinion, but did not specify what that information was. Assuming for purposes of this opinion that the out-of-court statements on which Cuenca relied in rendering his opinion were offered for their truth, we would still conclude there was no violation of the confrontation clause because those statements were not testimonial. In *People v. Valadez*, *supra*, 220 Cal.App.4th at page 28, the gang expert's opinions were based on written information from the police department regarding gangs, conversations with other gang officers, conversations with gang members, self-admissions by gang members, field interview cards, the facts of the case, and the defendants' tattoos. The appellate court assumed the general out-of-court statements on which the gang expert relied were offered for their truth, but nevertheless concluded there was no confrontation clause violation because they were not testimonial. (*Id.* at p. 32.)

8

The out-of-court statements on which Cuenca relied were not testimonial and, therefore, Cuenca's reliance on them could not have violated the confrontation clause. Cuenca testified he had reviewed STEP notices, field interview cards, contacts with defendant and other OVC members, and police reports. Field interview cards document contacts between police officers and members of the public, whether or not they are involved in a gang, and represent something of significance but are not necessarily connected with the commission of a crime. STEP notices are provided by the police to individuals, advising them of the Penal Code definitions of a criminal street gang and its activities, and are signed or initialed by the individuals and maintained by the police department. Field interview cards and STEP notices are not testimonial in nature. Contacts between the police and gang members are not necessarily testimonial, and nothing in the record before us shows the contacts considered by Cuenca were testimonial in nature. Police reports are not covered by *Crawford*. (*People v. Morris* (2008) 166 Cal.App.4th 363, 372-373 [business records and official records such as rap sheets are not testimonial under *Crawford*].)

### III.

### *GANG EXPERT'S DISCLOSURE OF EVIDENCE CONTAINING HEARSAY*

An expert may base his or her opinion on inadmissible hearsay. (Evid. Code, § 801, subd. (b).) Specifically, an expert witness may rely on hearsay evidence that would not otherwise be admissible in rendering an opinion as to whether an act was committed for the benefit of, at the direction of, or in association with a criminal street gang. (*People v. Gardeley*, *supra*, 14 Cal.4th at pp. 617-620.) *People v. Gardeley* remains the law of this state, which we must follow. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Defendant argues that under the California Supreme Court's recent decision in *People v. Dungo*, *supra*, 55 Cal.4th 608, his due process rights were violated when Cuenca testified as to his expert opinion based on hearsay evidence. In that case, the

9

expert forensic pathologist opined regarding the cause of the victim's death. (*Id.* at p. 614.) The testifying expert did not perform the autopsy on the victim, and did not prepare the autopsy report. (*Id.* at pp. 613, 614.) To reach his conclusion regarding the cause of death, the expert relied on, and testified about the existence of, the objective facts stated in the autopsy report. (*Id.* at pp. 614-615.) As explained *ante*, six justices concluded that for purposes of deciding whether *Crawford*, *supra*, 541 U.S. 36, applied to the statements in an autopsy report, the statements were offered for their truth. (*People v. Dungo*, *supra*, at p. 627 (conc. opn. of Werdegar, J.); *id.* at p. 635, fn. 3 (dis. opn. of Corrigan, J.).)

We do not agree that the concurring and dissenting opinions in *People v. Dungo* lead inevitably to the conclusion that the California Supreme Court is prepared to overrule its long-standing rule that a gang expert may rely on hearsay evidence in reaching his or her conclusions. *People v. Dungo* addresses the issue of hearsay evidence in connection with an alleged violation of the confrontation clause, an issue we have addressed and resolved against defendant, *ante*. To say that an out-of-court statement is offered for its truth for the purpose of determining whether its admission violates the confrontation clause does not resolve whether it is inadmissible hearsay if relied on by an expert witness, against a long line of cases that would hold otherwise. Whether the same configuration of Supreme Court justices would reach that conclusion if the issue were presented to them is purely speculative.

IV.

*LAY OPINION REGARDING GANG SIGNIFICANCE OF CLOTHING ITEMS*

City of Orange Police Officer Matthew Moss testified he executed a search warrant at defendant's home, and found the following clothing items in defendant's bedroom: three button-up orange shirts, a Washington Nationals baseball cap, and a Chicago Bears T-shirt featuring a large "C." Over defendant's objection, Moss testified the color of the shirts and the letters on the cap and the T-shirt were representative of the

10

OVC gang. On appeal, defendant argues that Moss was impermissibly permitted to offer lay opinion testimony.

Even if the trial court erred by admitting Moss's lay opinion testimony, the error was harmless because it is not reasonably probable the jury would have reached a more favorable decision in the absence of the testimony. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) Cuenca, who was admittedly an expert on gangs, testified that OVC uses the "C" in the Chicago Bears logo, the script "O" in the Baltimore Orioles logo, and the color orange to represent itself. Even if Moss impermissibly testified regarding the significance of the clothing items he seized from defendant's bedroom, the same testimony was provided by Cuenca without objection. Further, defendant had the opportunity to cross-examine Moss regarding his testimony, and specifically elicited testimony that Moss had never qualified as an expert as to OVC, and that defendant had clothing items featuring logos of another professional sports team which was not seized. (See *People v. Bradley* (2012) 208 Cal.App.4th 64, 84 [the defendants had "ample opportunity" to cross-examine witnesses who provided lay opinion testimony, "dispelling any possible prejudice"].)

V.

*MOTION TO SEVER*

A.

*The Trial Court Did Not Abuse Its Discretion by Denying
Defendant's Motion to Sever Trial of the Charges.*

Defendant argues the trial court erred by denying his motion to sever trial of the charges related to the robbery from the charges related to the assault. We review the denial of a motion to sever for abuse of discretion. (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1220.) To prevail, the defendant must make a "'clear showing of prejudice.'" (*Ibid.*, italics omitted.) We will uphold the trial court's ruling unless it

11

""""""falls outside the bounds of reason.""""""  (*Ibid.*)  We consider only the record available to the trial court prior to the denial of the motion to sever.  (*Ibid.*)

Trial of charges together is in the interests of justice and efficiency, and is preferred.  (*People v. Manriquez* (2005) 37 Cal.4th 547, 574.)  When deciding whether to grant a motion to sever, the court considers (1) whether the evidence relevant to each charge would be cross-admissible in separate trials, (2) whether some of the charges are likely to unusually inflame the jury against the defendant, (3) whether a weak case is being joined with a strong case, and (4) whether one of the charged offenses is a capital offense.  (*Alcala v. Superior Court, supra*, 43 Cal.4th at pp. 1220-1221.)

### 1.  *Cross-admissibility*

Evidence of one charged crime would be cross-admissible in the separate trial of another charged crime if relevant to show the intent, motive, or identity of the accused.  (Evid. Code, § 1101, subd. (b).)  The Attorney General does not argue the evidence would have been cross-admissible to show intent or motive.

Evidence is relevant to the identity of the accused if evidence from one crime is similar to evidence from another crime; the similarities must be """""so unusual and distinctive as to be like a signature"""""  (*People v. Soper* (2009) 45 Cal.4th 759, 777), raising the inference the crimes were committed by the same person (*id.* at pp. 778-779, fn. 14 [evidence that both victims were homeless men who had been killed by similar facial blunt force trauma and had been seen with the defendant shortly before their deaths was sufficient to demonstrate identity]; see *Williams v. Superior Court* (1984) 36 Cal.3d 441, 448-449 [evidence that two separate shootings were gang related was not sufficient to show identity].)

The evidence related to the robbery shows that defendant exited the store without paying, struck a loss prevention agent after being questioned, and attempted to flee.  The evidence related to the assault shows that defendant had an initial confrontation

12

with Balladares in November 2011 and assaulted him in February 2012 to further the reputation of defendant's gang. There are no common factors in the evidence which are so unusual and distinctive as to suggest the crimes were committed by the same person. The Attorney General argues the use of violence in the commission of both crimes demonstrates identity. During the robbery, defendant struck a loss prevention agent once before attempting to flee. During the assault, defendant and two other men repeatedly kicked and struck Balladares. The evidence related to the two incidents is not similar enough to demonstrate identity, and would not be cross-admissible.

This lack of cross-admissibility does not establish prejudice, however. We also must consider whether one of the charged offenses was unusually likely to inflame the jury against defendant or whether a weak case was combined with a strong case. (*People v. Elliott* (2012) 53 Cal.4th 535, 553.)

### 2. *Likelihood the Jury Was Unusually Inflamed*

Defendant argues the jury convicted him of robbery because it was inflamed against him due to the introduction of gang evidence relevant only to the assault. We disagree. Gang evidence is not necessarily prejudicial when relevant to one charged offense, but not another. (*People v. Sandoval* (1992) 4 Cal.4th 155, 173 [gang evidence was not prejudicial because both the defendant and the victims belonged to gangs]; *People v. Burnell* (2005) 132 Cal.App.4th 938, 947 [the benefits of joinder outweighed any prejudice derived from gang evidence not relevant to all of the charged offenses].) Further, a motion to sever has properly been denied in cases in which charged offenses were substantially more inflammatory than the gang evidence presented in this case. (*People v. Thomas* (2012) 53 Cal.4th 771, 799 [charges related to the executions of two police officers were not severed from an unrelated murder charge]; *People v. Mendoza* (2000) 24 Cal.4th 130, 162 [robbery charges were not severed from rape and kidnapping charges].)

13

Here, the evidence relevant to all of the charged offenses included testimony that defendant violently struck another person. Considering this evidence, we do not believe the gang evidence, related to the assault conviction, was substantially more inflammatory than the evidence related to the robbery. We also accept the trial court's finding that any possible prejudice could be mitigated by instructing the jury not to consider gang evidence when determining defendant's guilt on the charges related to the robbery. Finally, there was an overwhelming amount of evidence supporting the robbery conviction. Two loss prevention agents watched defendant exit the store with stolen merchandise. When confronted by the agents, defendant struck one of them and attempted to flee. Given the strength of this evidence, any possible prejudice from the gang evidence related to the assault conviction was harmless.

None of the cases defendant cites in support of his argument is on point. In *People v. Hernandez* (2004) 33 Cal.4th 1040, 1048-1051, the Supreme Court held the trial court did not abuse its discretion by refusing to bifurcate the trial of a gang sentencing enhancement allegation from the trial of the substantive crime. In *People v. Carter* (2003) 30 Cal.4th 1166, 1194-1196, the Supreme Court found there was no abuse of discretion in the denial of the defendant's motion in limine to exclude gang evidence because the evidence was relevant to the murder charges against the defendant, despite the fact no gang sentencing enhancement was alleged.

In *People v. Perez* (1981) 114 Cal.App.3d 470, 477-479, the admission of evidence of the defendant's gang membership was prejudicial because it was not relevant to prove any of the charged offenses, and no gang sentencing enhancement was alleged. Here, by contrast, a gang sentencing enhancement was alleged against defendant and the gang evidence was relevant to prove that enhancement.

In *People v. Albarran* (2007) 149 Cal.App.4th 214, 227, the court found the admission of gang evidence was prejudicial because large portions of the evidence were irrelevant to proving any of the charged offenses. In *People v. Albarran*, the defendant

14

was charged with attempted murder, and a gang enhancement was alleged, after he fired multiple shots into a residence. (*Id.* at p. 217.) At trial, the prosecution did not present any evidence suggesting the defendant committed the crimes for the benefit of, at the direction of, or in association with his gang. (*Id.* at p. 227.) However, the prosecution gave a detailed history of the violent crimes committed by other members of the defendant's gang, and presented evidence that the defendant's gang had threatened to kill police officers and was associated with the Mexican Mafia. (*Id.* at pp. 227-228.) Because there was no link between the attempted murder and the defendant's gang, it was prejudicial to admit the unrelated gang evidence. (*Id.* at p. 228.)

Here, substantial evidence showed defendant committed the assault on Balladares for the benefit of, at the direction of, or in association with defendant's gang. The first time defendant met Balladares he asked about his gang affiliation. While Balladares stated he was not affiliated with a gang, one of his friends claimed a rival gang affiliation, got into an argument with defendant, and another of Balladares's friends threw a rock at defendant's vehicle. On the day of the assault, defendant again asked Balladares about his gang affiliation before attacking him. Defendant stated he was a member of OVC and one of his associates wore paraphernalia associated with OVC.

3. *Combining a Strong Case with a Weak Case*

Defendant argues that the weak case related to the assault on Balladares was combined with the strong case related to the robbery at the Ralphs grocery store.[1] Defendant is incorrect. Neither case was weak. In the robbery case, defendant was seen by loss prevention agents leaving the store without paying for his merchandise. When questioned in front of the store, defendant struck an agent and attempted to flee. He was

---

[1] Defendant elsewhere argues he was convicted of robbery because inflammatory gang evidence relevant only to the assault was admitted. Defendant's argument here that he was convicted of assault because of the overwhelming evidence supporting the robbery conviction is obviously contradictory.

15

apprehended moments later.  The assault case was also strong.  Balladares identified defendant as his attacker and defendant's mother's car as the vehicle used during the assault.  The prosecution's gang expert testified that defendant was a member of a gang and had a motive to commit the crime to further the gang's reputation.  Defendant argues the assault case was weak because Balladares only identified him as his attacker after being shown a second set of photographs of defendant.  This was a possible weakness that defendant could have exploited.  It does not establish that the entire case was weak.  There was a substantial amount of other evidence supporting a conviction.

B.

*Joinder Did Not Render Defendant's Trial Fundamentally*
*Unfair in Violation of His Right to Due Process.*

Defendant argues joinder of the robbery and burglary charges with the assault charges violated his right to due process.  "[E]ven if a trial court's ruling on a motion to sever is correct at the time it was made, a reviewing court still must determine whether, in the end, the joinder of counts resulted in gross unfairness depriving the defendant of due process of law."  (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 281.)  Reversal is required if misjoinder had a """"substantial and injurious effect or influence"""" on the jury's verdict.  (*People v. Grant* (2003) 113 Cal.App.4th 579, 587.)

Defendant argues the strength of the evidence related to the robbery and burglary charges led the jury to convict him of assault on "the basis of criminal propensity."  To the contrary, there was ample evidence supporting the assault conviction.  Balladares identified defendant as his attacker and identified a car belonging to defendant's mother as the car used during the assault.  Defendant's mother testified defendant had borrowed her car on the day of the assault.  Cuenca testified that defendant was a member of a criminal street gang and had a motive to commit the crime to further the gang's reputation.  Considering this evidence, we do not believe evidence related to

16

the robbery-related charges substantially affected the jury's verdict on the assault charges.

Defendant cites *Bean v. Calderon* (9th Cir. 1998) 163 F.3d 1073 to support his argument that joinder violated his right to due process. *Bean v. Calderon* is a case from the Ninth Circuit Court of Appeals and is not binding on this court. (*People v. Uribe* (2011) 199 Cal.App.4th 836, 875.) Further, prior to being heard by the Ninth Circuit, the case was first heard by the California Supreme Court in *People v. Bean* (1988) 46 Cal.3d 919. Unlike the Ninth Circuit, the Supreme Court ruled that joinder did not violate the defendant's right to due process. (*Id.* at p. 940.) The court found the evidence related to the charged offenses would not have been cross-admissible at separate trials (*id.* at p. 938), but also found the defendant did not carry the burden of showing a weak case was combined with a strong case or that one of the charged offenses was "particularly inflammatory in comparison to the other" (*id.* at p. 939). The court held there was substantial evidence suggesting the defendant had committed both crimes and neither was more inflammatory than the other. (*Ibid.*) The Supreme Court's ruling is binding on this court. (*Auto Equity Sales, Inc. v. Superior Court*, *supra*, 57 Cal.2d at p. 455.)

*People v. Grant, supra,* 113 Cal.App.4th at page 588, does not support defendant's argument. In *People v. Grant*, the Court of Appeal, Fourth Appellate District, Division Two, ruled that joinder violated a defendant's right to due process because (1) the evidence in support of the charged offenses would not have been cross-admissible in separate trials, (2) the prosecution improperly urged the jury to consider evidence relating to any of the charged offenses when determining the defendant's guilt on a particular charge, (3) the court did not instruct the jury it could not consider evidence related to other charged offenses when determining the defendant's guilt on a particular charged offense, and (4) the case for one of the charged offenses was substantially stronger than the case for the others. (*Ibid.*)

17

Only one of those factors is met here; as explained *ante*, none of the evidence related to the robbery and assault cases would have been cross-admissible. The prosecution did not argue that the jury could consider evidence related to the robbery and burglary charges when determining defendant's guilt on the assault charges. The court did issue limiting instructions informing the jury to consider each charge separately and informing the jury when and for what purpose gang evidence could be considered. The gang evidence instruction was issued prior to the direct examination of the witnesses presenting gang evidence and again before jury deliberations. Neither case was substantially stronger than the other.

Joinder did not have a substantial and injurious effect on the jury's verdict, and defendant was not deprived of his right to due process.

VI.

*CUMULATIVE ERROR*

Having concluded there was no error, we necessarily conclude there was no cumulative error. (*People v. Bolin* (1998) 18 Cal.4th 297, 335.)

DISPOSITION

The judgment is affirmed.


FYBEL, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


ARONSON, J.

18