Filed 9/22/16; part. pub. & mod. order 10/13/16 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D067946 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD250082) |
| JEFF ANTOINE BOSWELL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Howard H. Shore, Judge. Affirmed as modified.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Kristine A. Gutierrez and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Jeff Antoine Boswell guilty of murdering Blanche Griffin while engaged in the commission or attempted commission of a robbery and burglary (count 1),

and burglary of an inhabited dwelling (count 2). The jury also found Boswell guilty of two counts of commercial burglary (counts 3, 4) and petty theft (count 5). The trial court found true certain prior conviction allegations. The court sentenced Boswell to a total term of life without the possibility of parole, plus 20 years and four months. Boswell appeals, contending: (1) his burglary conviction should be vacated because it is a lesser-included offense of the burglary special circumstance attached to his murder conviction; (2) consolidation of the charges denied him the due process right to a fair trial; (3) the trial court prejudicially erred in allowing the prosecution to admit certain crime scene and autopsy photographs; and (4) the abstract of judgment contains clerical errors. We affirm the judgment as modified to correct the clerical errors in the abstract of judgment.

## GENERAL FACTUAL BACKGROUND

Since Boswell does not challenge the sufficiency of the evidence supporting his convictions, we briefly summarize his offenses.

The Murder

Eighty-seven-year-old Griffin lived alone in a home in San Diego. Her neighbor, Ana Murillo, occasionally took Griffin to casinos because Griffin liked to gamble. Griffin managed her own money and always kept money hidden around the house, including any winnings from her gambling. Boswell, a drug user, lived with Murillo. Boswell did not work and Murillo gave him money to buy drugs.

On July 7, 2013, Murillo took Griffin to a casino where they met Boswell. (All further date references are to 2013.) Griffin won some money during that trip. Murillo later escorted Griffin inside her apartment. Boswell was with Murillo that evening, but

2

left in the middle of the night.  A few days later, Griffin's son-in-law found Griffin's body on the floor of her home when he went to check on her after Griffin failed to return some telephone calls.  A medical examiner opined that Griffin died after suffering a physical assault and strangulation.  He classified her death as a homicide.

The police arrested Boswell on an outstanding warrant for a parole violation, but released him on July 21.  While the police had Boswell in custody they swabbed the inside of his mouth and scraped his fingernails for DNA.  Male DNA recovered from Griffin's neck shared markers with Boswell's DNA.  Boswell was also a possible contributor to DNA found under Griffin's fingernails.  A criminalist opined that a one in 1.2 quintillion possibility existed that the DNA found on Griffin's right hand belonged to an African-American other than Boswell.

The Theft Crimes

On January 4, before the murder, Boswell stole a cellular telephone from a hospital emergency technician and received a citation for petty theft.  On July 22 and 30, two liquor stores were burglarized.  Blood left at both crime scenes belonged to Boswell.

DISCUSSION

## I. *Lesser Included Offense*

A.  Additional Background

Count 1 charged Boswell with murdering Griffin and alleged two special circumstances, including a special circumstance that Boswell committed the murder while engaged in the commission or attempted commission of the crime of burglary in the first or second degree.  Count 2 alleged that Boswell committed burglary of the first degree by unlawfully entering a building occupied by Griffin with the intent to commit theft.

The jury convicted Boswell of first degree murder and found true the burglary and robbery special circumstance allegations.  The jury also convicted Boswell of the burglary count.  The trial court sentenced Boswell to a term of 25-years to life for the burglary, but stayed the sentence under Penal Code[1] section 654.

B.  Analysis

Boswell contends that, under the elements test, burglary is a lesser included offense of murder committed during a burglary because the offense of murder with a burglary special circumstance cannot be committed without also committing the crime of burglary.  Thus, he asserts that his burglary conviction must be reversed.  The People

---

1      Undesignated statutory references are to the Penal Code.

disagree, arguing that special circumstances, like enhancements, are irrelevant to the lesser-included offense analysis. The People have the better argument.

Generally, a defendant may be convicted of multiple offenses arising out of the same act or course of conduct. (§ 954; *People v. Reed* (2006) 38 Cal.4th 1224, 1226-1227.) A defendant, however, may not be convicted of an offense that is included within another offense. (*Id.* at p. 1227.) To determine whether one offense is necessarily included within another, we look to the statutory elements of the offenses. "[I]f the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former." (*Ibid.*) Where, as here, the challenge is to a charged offense, we do not look to the accusatory pleadings. The pleadings are relevant only when the question is whether a defendant may be convicted of an uncharged crime. (*Id.* at pp. 1228-1231.)

As the People note, our high court has repeatedly stated that sentencing enhancements are not elements of the offense and cannot be considered in determining whether an offense is a lesser included offense. (*People v. Wolcott* (1983) 34 Cal.3d 92, 100-101 (*Wolcott*); *People v. Izaguirre* (2007) 42 Cal.4th 126, 128 [enhancement allegations may not be considered in defining necessarily included offenses for the multiple conviction rule, *Apprendi v. New Jersey* (2000) 530 U.S. 466 notwithstanding]; *People v. Sloan* (2007) 42 Cal.4th 110, 122-123 (*Sloan*) [same].) In *People v. Anderson* (2009) 47 Cal.4th 92 (*Anderson*), our high court explained that a criminal offense is a collection of specific factual elements that the Legislature has chosen to define as a crime. (*Id.* at p. 101.) On the other hand, a " 'penalty provision prescribes an added

5

penalty to be imposed when the offense is committed under specified circumstances.' [Citation.] Under California law, *a sentencing enhancement or penalty allegation* is not a complete offense in itself. It is 'separate from the underlying offense and does not set forth elements of the offense or a greater degree of the offense charged. [Citations.]' [Citation.] Conceptually, a penalty provision is an appendage that attaches to an offense and, if proven, prescribes additional punishment for the crime." (*Id.* at p. 115, italics added.)

Murder and burglary are two separate crimes that contain different elements. (See, § 187, subd. (a) [murder], compare § 459 [burglary].) The statutory elements of burglary are not necessarily included in the statutory elements of murder. Thus, to make his argument, Boswell creates a new crime, "murder with a burglary special circumstance." While the Legislature can create new crimes, Boswell cannot.

Boswell next attempts to distinguish sentencing enhancements discussed in *Wolcott* and *Sloan*, with special circumstances. Boswell notes that California Rules of Court, rule 4.405(3) defines an enhancement as "an additional term of imprisonment added to the base term." In contrast, he points out that a special circumstance under subdivision (a) of section 190.2 attaches to a first degree murder charge to subject a defendant to the penalty of death, or imprisonment for life without the possibility of parole. Thus, instead of adding a more severe sentence, Boswell argues that a special circumstance removes the possibility of release. We fail to see the difference.

The jury found Boswell guilty of first degree murder. (§ 187, subd. (a).) The jury later found true the burglary special circumstance allegation attached to the murder

6

charge. The burglary special circumstance *increased* the penalty for Boswell's murder conviction by adding the death penalty or imprisonment for life without the possibility of parole. (§ 190.2, subd. (a)(17)(G).) The burglary special circumstance is not an element of murder; rather, it functions similar to a sentencing enhancement to increase Boswell's penalty for the murder. The burglary special circumstance is irrelevant to the determination under the statutory elements test of whether Boswell's burglary charge is a lesser included offense of his murder charge. Accordingly, we affirm Boswell's burglary conviction.

## II. *Consolidation of Charges*

A. Additional Background

The People initially filed a complaint charging Boswell with one count of murder with a robbery special circumstance, a prior serious felony conviction, and a prior strike conviction. The People later filed an amended complaint adding a burglary special circumstance to the murder charge, and two additional counts of commercial burglary. Just before trial, the district attorney filed a consolidated amended information which included a charge of petty theft based on Boswell's theft of a cellular telephone, and also added an additional prison prior. Defense counsel did not oppose the consolidated amended information. Defense counsel indicated that when the district attorney elected not to seek the death penalty, he re-analyzed the matter and elected not to request severance of the theft charges. Defense counsel believed the burglary charges explained Boswell's conduct after the murder. The court arraigned Boswell on the consolidated amended information.

7

B.  Analysis

Boswell contends the charges related to the homicide should have been severed from the lesser charges, and the failure to do so deprived him of his Fourteenth Amendment rights to due process and a fair trial on the more serious offense.   Boswell admits that he failed to object to the consolidation or move to sever the charges, but asserts the issue is reviewable for gross unfairness.  Belatedly, in his reply brief, Boswell asserts ineffective assistance of counsel.  We address each argument.

Boswell's failure to move for severance forfeited the issue on appeal.  (*People v. Maury* (2003) 30 Cal.4th 342, 392.)  To avoid forfeiture, Boswell contends we may reverse his convictions, despite his failure to seek severance, because consolidation of the charges caused gross unfairness that deprived him of a fair trial.  If a trial court's severance or joinder ruling is correct at the time it was made, a reviewing court must reverse the judgment if the "defendant shows that joinder actually resulted in 'gross unfairness' amounting to a denial of due process."  (*People v. Arias* (1996) 13 Cal.4th 92, 127.)  Our Supreme Court, however, "never has adopted the position urged by [Boswell]," i.e., that a defendant can claim gross unfairness in the absence of a motion to sever.  (*People v. Rogers* (2006) 39 Cal.4th 826, 851.)  Like the Supreme Court in *People v. Rogers*, "[w]e need not decide whether review for gross unfairness is available in the absence of a motion to sever or an objection to joinder, for even if such review is available, gross unfairness did not result in the present case."  (*Ibid.*)

9

Here, the evidence underlying the murder and theft offenses was distinct and straightforward.  (*People v. Soper* (2009) 45 Cal.4th 759, 784 [where evidence pertaining to joined charges is simple and distinct, the prejudicial effect of joinder usually does not rise to a level of gross unfairness].)  The trial court instructed the jury with CALCRIM No. 3515 that each count charged a distinct crime and had to be considered separately.  The jury also received instructions on the elements of the offenses, the mental state required for each charge, and the prosecution's burden of proving the charges beyond a reasonable doubt.  We presume the jury followed these directions.  (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)  Boswell cited to nothing in the record suggesting the jury expressed any confusion about the charges.  Accordingly, Boswell has not demonstrated any gross unfairness that denied him due process or a fair trial.

A defendant claiming ineffective assistance of counsel must show not only that his or her counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, but also that it is reasonably probable, but for counsel's failings, the result would have been more favorable to the defendant.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 694.)  To prevail on a claim of ineffective assistance of counsel based specifically on counsel's failure to move for severance, Boswell "must show that reasonably competent counsel would have moved for severance, that such motion would have been successful, and that had the counts been severed an outcome more favorable to him was reasonably probable."  (*People v. Grant* (1988) 45 Cal.3d 829, 864-865.)  Assuming, without deciding, that reasonably competent

10

counsel would have moved for severance, Boswell cannot demonstrate that a motion to sever would have been successful.

"Joinder of criminal charges for trial benefits the public by reducing delay in the disposition of criminal charges, and it benefits the state by conserving judicial resources and public funds." (*People v. Hill* (1995) 34 Cal.App.4th 727, 735.) Section 954 contains the statutory rules governing the joinder and severance of criminal charges. Section 954 provides, in part: "An accusatory pleading may charge two or more different offenses connected together in their commission, or . . . two or more different offenses of the same class of crimes or offenses, under separate counts . . . ." (§ 954.)

Here, the threshold statutory requirements for joinder are met as the crimes were connected together in their commission with the "element of intent to feloniously obtain property run[ning] like a single thread through the various offenses." (*People v. Mendoza* (2000) 24 Cal.4th 130, 160 [robberies and a murder committed on sequential days were connected together in their commission]; *People v. Stewart* (1985) 165 Cal.App.3d 1050, 1058 [proper to join murder and robbery charges involving different victims where the offenses occurred during a one-month period and therefore grew out of a "continuing and intertwined sequence of criminal activity"].) Nonetheless, Boswell may be entitled to severance of the charges "in the interests of justice and for good cause shown." (§ 954.)

To have prevailed on a motion to sever, Boswell had the burden of demonstrating substantial prejudice requiring that the charges be separately tried. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1315.) " 'Refusal to sever may be an abuse of discretion where: (1) evidence on the crimes to be jointly tried would not be cross-admissible in separate

11

trials; (2) certain of the charges are unusually likely to inflame the jury against the defendant; (3) a "weak" case has been joined with a "strong" case, or with another "weak" case, so that the "spillover" effect of aggregate evidence on several charges might well alter the outcome of some or all of the charges; and (4) any one of the charges carries the death penalty or joinder of them turns the matter into a capital case. [Citations.]' " (*Ibid.*)

As the People note, evidence cross-admissibility existed because the police linked Boswell's DNA to three of the four crime scenes. Police obtained Boswell's DNA profile from fingernail scrapings on Griffin's right hand and from samples taken from her neck. From this evidence, police connected Boswell to the two commercial burglary cases that occurred a few weeks after the murder. In addition, the evidence presented concerning the commercial burglaries and petty theft was less inflammatory than the murder committed during a burglary and robbery. The commercial burglaries occurred when the stores were closed and unoccupied. Additionally, Boswell stole the cellular telephone after the owner of the telephone had left the room. Thus, it is unlikely that these theft crimes inflamed the jury into convicting Boswell of murder because it determined he was a thief.

As for coupling a weak case with a strong case, strong evidence demonstrated Boswell's culpability for each charge. Boswell admitted stealing the cellular telephone and stealing cigarettes at the two commercial establishments where he left his blood. Although Boswell denied killing Griffin, DNA evidence collected from her neck and under her fingernails connected him to the crime. The jury also heard evidence that Griffin told her gardener that she did not trust Boswell and was "afraid of him." This is

12

not a situation where the "spillover" effect of aggregate evidence on several charges might have altered the outcome of the murder charge.

We conclude that joinder was proper; thus, had defense counsel opposed the consolidation or moved for severance, these requests would have been denied. Accordingly, defense counsel was not ineffective in failing to object to the consolidation and not moving for severance.

### III. *Admissibility of Photographic Evidence*

A.  Additional Background

The prosecutor moved in limine to admit crime scene and autopsy photographs. The prosecutor argued that the photographs would help the medical examiner present his testimony, and assist the jury in determining whether Griffin's death was due to trauma and whether Boswell possessed the requisite mental state. The trial court ruled that the prosecution could show the photographs to witnesses, but before any photograph was published or offered into evidence, the defense could object and the court would rule on the objection.

During the medical examiner's testimony, defense counsel objected to numerous photographs of Griffin taken during the autopsy. The court overruled the objections and later allowed the photographs into evidence. During the testimony of Griffin's daughter, defense counsel objected to the publication of exhibits 2S and 2T, showing the position of Griffin's body at the crime scene. The court allowed the prosecutor to ask Griffin's daughter about the photographs, and would then, depending upon the answers, make a final ruling as to whether they could be published. Defense counsel renewed the

13

objection before the photographs were published to the jury, but the court overruled the objection.

Defense counsel also objected to exhibits 12A through 12E, photographs of Griffin's face, arguing that they were the "most gruesome in detail." The court stated it would allow the photographs into evidence because they depicted areas of Griffin's body which were discussed in the testimony, and were not "unduly prejudicial when compared with the[ir] probative value."

B. Analysis

Boswell contends the trial court abused its discretion in overruling his Evidence Code section 352 objections to the photographs because the photographs were cumulative, unduly prejudicial and inflammatory. We find no prejudicial error.

A trial court has the discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) Specifically, admission into evidence of victim photographs is within the broad discretion of the trial court when a claim is made that the photographs are unduly gruesome or inflammatory. (*People v. Crittenden* (1994) 9 Cal.4th 83, 133.) We will not disturb the trial court's exercise of its discretion unless the probative value of the photographs clearly is outweighed by their prejudicial effect. (*Id*. at p. 134.) Appellate courts "have rejected the contention that photographs of a murder victim must be excluded as cumulative simply because testimony also has been introduced to prove the facts that the photographs are intended to

14

establish." (*Id.* at pp. 134-135.) Prosecutors "are not obliged to prove their case with evidence solely from live witnesses," and a jury is "entitled" to see photographs of a victim's body "to determine if the evidence supports the prosecution's theory of the case." (*People v. Gurule* (2002) 28 Cal.4th 557, 624.)

We have examined the photographs and find they are not of such a nature as to overcome the jury's rationality. The trial court properly admitted the two photographs of Griffin's body at the crime scene to corroborate and illustrate the testimony of Griffin's daughter and the investigating officers about the condition in which they found the crime scene. Generally, the autopsy photographs depicted the external injuries to Griffin's body, the inside of her mouth, her eyes and internal skull. These photographs were relevant to establish that a murder had occurred and assist the jury in understanding the medical examiner's testimony. The photographs supported the prosecution's theory of felony murder in the commission or attempted commission of robbery and burglary. Exhibits 12A through 12E, photographs of Griffin's injuries taken at the crime scene, similarly assisted the jury in understanding and illustrating the medical examiner's testimony that some type of trauma caused the injuries to Griffin's lip, hands, ear and skin.

We conclude that the trial court did not abuse its discretion in determining that the risk of undue prejudice did not substantially outweigh the probative value of each of the admitted photographs. Even assuming the trial court abused its discretion in allowing their admission, the assumed error is harmless given the strength of the evidence connecting Boswell to the murder. (*Chapman v. California* (1967) 386 U.S. 18, 24 [error

15

will be deemed harmless if reviewing court can conclude beyond a reasonable doubt that a rational jury would have found defendant guilty absent the error]; *People v. Allen* (1986) 42 Cal.3d 1222, 1258 [any error in admitting photographs was plainly harmless given the evidence linking defendant to the slayings].)

IV. *Abstract of Judgment*

Boswell contends, the People concede, and we agree that the trial court erred in imposing a parole revocation fine under section 1202.45 because Boswell was sentenced to life without the possibility of parole. Section 1202.45 does not apply where, as here, there will be no parole period. (*People v. Oganesyan* (1999) 70 Cal.App.4th 1178, 1183.) Boswell contends, the People concede, and we agree that the trial court stayed Boswell's sentence on count 2 under section 654, but that the stay is not indicated in the abstract of judgment. We order that the judgment be modified to delete the parole revocation fine and to reflect the stay of sentence on count 2.

DISPOSITION

The judgment is modified to strike the parole revocation fine under Penal Code section 1202.45, and to correct the abstract of judgment to reflect that sentence on count 2 is stayed under Penal Code section 654.  The clerk of the superior court is directed to prepare an amended abstract of judgment and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.  (Pen. Code, §§ 1213, subd. (a), 1216.)  As modified, the judgment is affirmed.


PRAGER, J.*

WE CONCUR:


NARES, Acting P. J.


HALLER, J.

---

*      Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 10/13/16

CERTIFIED FOR PARTIAL PUBLICATION[*]

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JEFF ANTOINE BOSWELL,<br><br>    Defendant and Appellant. | D067946<br><br>(Super. Ct. No. SCD250082)<br><br>ORDER MODIFYING OPINION<br>AND CERTIFYING OPINION<br>FOR PARTIAL PUBLICATION<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on September 22, 2016, be modified as follows:

1. On page 2, the first full paragraph is deleted and the following paragraphs are inserted in its place:

A jury found Jeff Antoine Boswell guilty of murdering Blanche Griffin while engaged in the commission or attempted commission of a robbery and burglary (count 1), and burglary of an inhabited dwelling (count 2). The jury also found Boswell guilty of two counts of commercial burglary (counts 3, 4) and petty theft (count 5). The trial court found true certain prior conviction allegations. The court sentenced Boswell to a total term of life without the possibility of parole, plus 20 years and four months.

---

[*]      Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts II, III, and IV.

In the published portion of this opinion we reject Boswell's argument that his burglary conviction be vacated because it is a lesser included offense of the burglary special circumstance attached to his murder conviction. In the unpublished portion of this opinion we reject his arguments that: (1) consolidation of the charges denied him the due process right to a fair trial; and (2) the trial court prejudicially erred in allowing the prosecution to admit certain crime scene and autopsy photographs. We affirm the judgment as modified to correct clerical errors in the abstract of judgment.

There is no change in the judgment.

The opinion in the above-entitled matter filed on September 22, 2016, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be partially published in the Official Reports and it is so ordered.

Respondent's request for partial publication is GRANTED.

NARES, Acting P. J.

Copies to: All parties

2