Filed 1/17/23 P. v. Ackerson CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ELTON ALVIN ACKERSON et al.,<br><br>Defendants and Appellants. | C090994<br><br>(Super. Ct. Nos. 17FE001073, 17FE001076, 17FE001078) |

Elton Alvin Ackerson, Dereck Laron Gi, Jr., Malik Green-Geiger, and Lonnie Kilgore shot an affiliate of a rival gang.  This appeal involves defendants Ackerson and Gi only.  Green-Geiger and Kilgore filed separate appeals in case Nos. C090722 and C091113.

Ackerson was convicted of attempted murder and unlawful possession of firearms and ammunition.  Gi was convicted of attempted murder and unlawful possession of firearms.  The jury found true gang and firearm enhancement allegations and also an allegation that the attempted murder was done willfully and with deliberation and premeditation.

Gi contends (1) the trial court abused its discretion in admitting evidence of two rap videos in which Ackerson and Kilgore performed; (2) his count one conviction is based on an impermissible theory of conspiracy to commit attempted murder; (3) the trial court erred in denying the defense request to instruct on assault with a deadly weapon as a lesser included offense of attempted murder; (4) the fines, fees and assessments

1

imposed must be stayed because there was no finding that he had the ability to pay them; (5) the cumulative effect of the above asserted errors warrants reversal; (6) his count 1 sentence is unauthorized because the operative pleading did not plead that the attempted murder was willful, deliberate and premeditated. Ackerson joins in contentions (2) and (3) asserted by Gi.

Ackerson contends (7) the abstract of judgment must be corrected to delete one of the Penal Code section 667[1] prior serious felony enhancement sentences; (8) the amendments to section 186.22 apply retroactively and the section 186.22, subdivision (b) true findings must be reversed; and (9) section 1109 applies retroactively and requires reversal of his convictions. Gi joins in contentions (8) and (9) asserted by Ackerson.

We conclude (1) the trial court did not abuse its discretion in admitting the rap video evidence; (2) the error in instructing on an impermissible theory of conspiracy to commit attempted murder was harmless; (3) the trial court was not required to instruct on assault with a deadly weapon as a lesser included offense of attempted murder; (4) Gi's ability to pay claim is forfeited; (5) reversal is not required for cumulative error; (6) Gi forfeited his pleading deficiency claim and fails to establish prejudice for his associated ineffective assistance of counsel claim; (7) the abstract of judgment for Ackerson must be corrected; (8) the amendments to section 186.22 apply retroactively to Ackerson and Gi and the section 186.22, subdivision (b) findings against them must be vacated; and (9) even if section 1109 applies retroactively to Ackerson and Gi, they were not prejudiced by the failure to bifurcate the trial on the gang enhancement allegations.

Ackerson also joins and adopts by reference the argument by Green-Geiger in case No. C090722, which is the same as claim (6) by Gi, but we do not consider the claim

---

[1] Undesignated statutory references are to the Penal Code.

because Ackerson fails to explain with citation to authority how the asserted claim by Green-Geiger resulted in error and prejudice as to Ackerson.

We will vacate the gang enhancement allegation findings under section 186.22 as to Ackerson and Gi and remand the matter to give the People an opportunity to retry those allegations under the law as amended by Assembly Bill No. 333 (2021-2022 Reg. Sess.), and for resentencing as appropriate. We will affirm the judgments in all other respects and direct the trial court to prepare amended abstracts of judgment.

BACKGROUND

M.G., a Del Paso Heights Bloods gang affiliate, was driving to his aunt's house on High Street in Del Paso Heights on October 20, 2016 when he noticed he was being followed. He was in territory claimed by the Del Paso Heights Bloods gang. He saw in his rear view mirror a black car with tinted windows. He jumped out of his car after parking it in front of his aunt's house and immediately heard gunshots. Fifteen shots were fired from two guns at 2:34 p.m. The shots came from an area of High Street closer to North Avenue. M.G. was shot in the groin area. A bullet was still lodged in his body at the time of the trial.

M.G. claimed not to know the shooters or the motive for the shooting. He told law enforcement officers that even if he knew who shot him, he probably would not identify the shooter. At trial, M.G. testified he did not see any cars following him. He denied saying he had been shot by the "Manors" [the Strawberry Manor Gangster Bloods (Manors)]. He testified he did not know defendants and did not know why he was shot.

Witness No. 1 was working on a fence on High Street when the shooting occurred. He saw M.G. speeding, stop in front of a house and get shot. There were two cars behind M.G. One car was a dark-colored sedan with tinted windows. Witness No. 1 saw a black male exit the front passenger seat of the dark-colored car and point a black handgun at M.G. M.G. said "It was Manors" after he was shot. Contrary to his pretrial statements, however, Witness No. 1 testified at trial that he did not witness anything.

3

Home surveillance video showed a silver or gray Chrysler 200 and a black Lexus speeding along North Avenue about 20 to 26 seconds after the shooting. Those cars followed a silver Lexus about 14 minutes before the shooting. The silver Lexus was registered to Ackerson. The Chrysler was registered to Gi's wife. The dark-colored Lexus was registered to Green-Geiger.

Cell phone and tracker data showed calls between defendants' cell phones on the day of the shooting and that defendants had been in the same areas together, including the area of the shooting, during relevant time periods.

The People's forensic firearms analysis expert testified that nine-millimeter shell casings found in the area of the shooting were fired from a nine-millimeter Taurus Millennium handgun found at an address that Ackerson described as his apartment. A nine-millimeter Glock handgun and various ammunition were also found in the apartment. Kilgore was a potential contributor to the DNA mixture obtained from the Taurus Millennium handgun. The People's DNA analysis expert could not conclude one way or the other whether Ackerson was a potential contributor to the DNA mixture from the handgun.

In addition, .45 caliber cartridge casings found at the scene of the shooting were fired from a .45 caliber Glock 30 handgun found in the possession of Kenyetta Lofton, a Nogales Gangster Crips gang member. Lofton obtained the Glock handgun from Gi.

Detective Zach Eaton testified as the prosecution's gang expert. He said there were about 80 to 100 members in the Manors gang in 2016. He described the colors, hand signs, allies and rivals and tattoos associated with the Manors, the activities and crimes committed by the gang, prior convictions of Manors gang members, and the territory of the Manors and its rival the Del Paso Heights Bloods. He described the animosity between the Manors and the Del Paso Heights Bloods in 2016. He also explained the concepts of respect, reputation and snitching.

Detective Eaton opined that Ackerson and Kilgore were active members of the Manors in October 2016. His opinion was based on Ackerson and Kilgore's tattoos, social media posts, gang rap videos, contacts, and intercepted phone calls. Detective Eaton opined that Gi was an active member of the Nogales Gangster Crips gang in October 2016. The opinion was based on Gi's association with Lofton, clothing, appearance in videos, wiretapped conversations, social media posts, information from other gang members and the facts of this case. Detective Eaton opined that Green-Geiger was an active member of the Monk Mob group of the North Highlands Gangster Crips in October 2016. The opinion was based on Green-Geiger's tattoos and prior validation. Detective Eaton described posts on defendants' social media accounts relevant to his expert opinion about defendants' gang membership. He also testified about two videos in which Ackerson and Kilgore rapped. We will discuss those videos in the section relating to admission of that evidence.

According to Detective Eaton, the location of the shooting was significant because Del Paso Heights Bloods gang members lived there. Detective Eaton opined, based on a hypothetical that tracked the facts of this case, that the shooting of a rival gang member and possession of guns benefitted the gang and was in association with the gang. He said the shooting would primarily benefit the Manors. He would expect a shooting to occur when members of gangs who were allied deliberately travel into the territory of a rival gang.

The jury found Ackerson guilty of attempted murder (§ 664/187, subd. (a) -- count one), unlawfully possessing the nine-millimeter Taurus Millennium handgun (§ 29800, subd. (a)(1) -- count four), unlawfully possessing the nine-millimeter Glock handgun (§ 29800, subd. (a)(1) -- count five), and unlawfully possessing ammunition (§ 30305, subd. (a)(1) -- count six). The jury found true allegations that the attempted murder was done willfully and with deliberation and premeditation, that Ackerson committed the crimes for the benefit of, at the direction or in association with a criminal street gang

5

with the specific intent to promote, further or assist in criminal conduct by gang members (§ 186.22, subd. (b)), and that in the commission of the attempted murder, one of the principals personally used a firearm (§ 12022.53, subd. (b)), discharged a firearm (§ 12022.53, subd. (c)) and personally discharged a firearm and caused great bodily injury (§ 12022.53, subd. (d)). Upon waiver of a jury trial on the issue, the trial court found true the allegation that Ackerson had a prior strike conviction. The trial court sentenced Ackerson to a total determinate prison term of 14 years four months, consecutive to an indeterminate term of 39 years to life.

The jury found Gi guilty of attempted murder (§ 664/187, subd. (a) -- count one) and unlawfully possessing a firearm on November 20, 2016 (§ 29800, subd. (a)(1) -- count three). The jury found true allegations that the attempted murder was done willfully and with deliberation and premeditation, that Gi committed the crimes for the benefit of, at the direction or in association with a criminal street gang with the specific intent to promote, further or assist in criminal conduct by gang members (§ 186.22, subd. (b)), and that in the commission of the attempted murder, one of the principals personally used a firearm (§ 12022.53, subd. (b)), discharged a firearm (§ 12022.53, subd. (c)) and personally discharged a firearm and caused great bodily injury (§ 12022.53, subd. (d)). The trial court sentenced Gi to an indeterminate prison term of 32 years to life, consecutive to a determinate term of five years.

## DISCUSSION

### I

Gi contends the trial court abused its discretion in admitting evidence of two rap videos in which Ackerson and Kilgore performed.

### A

The People moved in limine to admit evidence regarding the Manors, including two rap videos. The People argued that the videos demonstrated defendants' mindset and affiliations and were central to the prosecution gang expert's opinions.

6

Detective Eaton testified about the rap videos at an Evidence Code section 402 hearing as the videos were played for the trial court. The first video, called "GAP Shoota Gang," was made in December 2016 or January 2017, and was posted on YouTube. The people in the video displayed Manors hand signs. The video featured Manors gang members and showed the association between members of different gangs. Ackerson and Kilgore rapped in the video. Gi appeared in the video but his face was covered. The lyrics described the Manors' activities and beliefs. Detective Eaton explained particular terms and phrases in the lyrics that referred to Gi, shootings, killing rival gang members, snitching, and disrespect for the Del Paso Heights Bloods gang. The detective opined the video was also relevant because it showed tattoos on Kilgore associated with the Manors; the lyrics referenced Manors gang members; Kilgore and Gi had firearms in the video; and the video showed support for Green-Geiger. According to Detective Eaton, the video was directed at rival gang members, showing them that Manors gang members were armed and could carry out what was described in the video.

The second video, "Feds Hit the City," was also posted on YouTube. It was made between 2015 and 2016. The lyrics referred to the FBI serving simultaneous search warrants on Manors gang members and people in the Strawberry Manor area. Ackerson, Kilgore and others rapped in the video. Green-Geiger appeared in the video. Two individuals in the video had firearms. People in the video displayed gang hand signs and hand signs showing disrespect for Del Paso Heights Bloods. Detective Eaton explained particular terms and phrases in the lyrics that referred to carrying firearms, shootings, discipline for snitching, committing violent crimes on behalf of the gang, the Manors' allies, people who were killed by Del Paso Heights Bloods gang members, killing enemies, and showing disrespect for rival gangs.

The People argued that the rap video evidence was relevant to defendants' states of mind, the gang enhancement allegations, and snitching. In particular, the People argued that the videos showed why defendants drove into rival gang territory to kill

7

someone. The People asserted that the probative value of the videos outweighed any prejudicial effect.

The trial court admitted the rap video evidence. It concluded the evidence was relevant to the existence of a criminal street gang, defendants' gang membership, the association between the different gangs involved in this case, defendants' animosity toward the Del Paso Heights Bloods, and the gang enhancement allegations. The trial court concluded that portions of the videos were prejudicial but their probative value was not outweighed by the danger of undue prejudice, and admission of the evidence would not mislead the jury, consume time unnecessarily, or have a spillover effect that would deny defendants' their rights to a fair trial.

B

Among other things, Gi now challenges the admission of the rap video evidence on grounds of hearsay, the First Amendment, impermissible propensity evidence, lack of indicia of reliability, and that the evidence "would trigger racial animus, fear, and latent bias in any juror who was predisposed." However, he did not raise those particular objections in the trial court. For that reason, he has not preserved those claims for appellate review. (*People v. Gutierrez* (2009) 45 Cal.4th 789, 819; *People v. Partida* (2005) 37 Cal.4th 428, 431.) We address only those claims that were raised in the trial court.

Gi argues Detective Eaton's opinion regarding the meaning of lyrics constituted speculation. But the parties stipulated for purposes of the evidentiary hearing that Detective Eaton was an expert on criminal street gangs. The detective said his opinions were based on five years investigating gangs, following gangster rap, debriefing informants and gang members, writing two gang wiretaps in Sacramento County, and listening to hundreds of hours of telephone conversations between gang members. He also explained the basis for his expertise on terms relating to firearms and ammunition. The argument lacks merit.

8

Gi also asserts that the rap video evidence was irrelevant and unduly prejudicial.

"[A]s a general rule, [gang evidence] is admissible if it is logically relevant to some material issue in the case, other than character evidence, is not more prejudicial than probative and is not cumulative." (*People v. Albarran* (2007) 149 Cal.App.4th 214, 223 (*Albarran*).) Gang evidence -- i.e., evidence of the defendant's gang affiliation and activity and the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, and rivalries -- may be relevant to establish motive, specific intent or other issues pertinent to guilt of the charged crime. (*Id.* at pp. 223-224; accord *People v. Mendez* (2019) 7 Cal.5th 680, 691; *People v. Hernandez* (2004) 33 Cal.4th 1040, 1051; *People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1167-1168; *People v. Burnell* (2005) 132 Cal.App.4th 938, 947.) However, "even if [gang] evidence is found to be relevant, the trial court must carefully scrutinize [such] evidence before admitting it because of its potentially inflammatory impact on the jury." (*Albarran,* at p. 224; but see *Samaniego,* at p. 1168 [" ' "[B]ecause a motive is ordinarily the incentive for criminal behavior, its probative value generally exceeds its prejudicial effect, and wide latitude is permitted in admitting evidence of its existence." ' "].) Under Evidence Code section 352, the trial court may, in its discretion, exclude evidence if its probative value is substantially outweighed by the probability that its admission will create substantial danger of undue prejudice.

The decision on whether gang evidence is relevant and not unduly prejudicial rests within the broad discretion of the trial court. (*Albarran, supra*, 149 Cal.App.4th at pp. 224-225; *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1373 (*Olguin*).) We will not disturb a trial court's exercise of discretion " 'except on a showing that the [trial] court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*Albarran,* at p. 225, italics omitted.) The appellant bears the burden to demonstrate abuse of discretion and prejudice. (*Ibid.*)

9

Gang rap videos and lyrics have been found relevant and admissible in cases alleging gang-related crimes. (*Olguin, supra*, 31 Cal.App.4th 1355, 1372-1373 [rap lyrics admissible against author because they demonstrated the author's gang membership, loyalty to the gang, and motive and intent on the day of the shooting]; *People v. Zepeda* (2008) 167 Cal.App.4th 25, 35 (*Zepeda*) [rap evidence was probative of the defendant's state of mind and intent, gang membership, and that the defendant's gang had the motive and intent to kill members of the victim's gang]; cf. *People v. Coneal* (2019) 41 Cal.App.5th 951, 954-955, 965-968, 971-972 (*Coneal*) [admission of five gangster rap videos was an abuse of discretion under Evidence Code section 352 because there was other evidence of the rap videos, the lyrics could be understood as figurative expressions, and they were not written near the time of the crime].)

Here, the rap video evidence was highly relevant to the existence of a criminal street gang, gang membership, defendants' motive and intent on the day of the shooting, and whether members of the Manors, Nogales Gangster Crips and Monk Mob group of the North Highlands Gangster Crips gangs were allied. (See *Olguin, supra*, 31 Cal.App.4th at pp. 1372-1373; *Zepeda, supra*, 167 Cal.App.4th at p. 35; *People v. Johnson* (2019) 32 Cal.App.5th 26, 62.) The People had to prove that Ackerson and Gi intended to kill M.G. and that in committing the attempted murder, Ackerson and Gi intended to assist, further, or promote criminal conduct by gang members. (Stats. 2017, ch. 561, § 178 [former section 186.22, subdivision (b)(1)]; *People v. Dominguez* (2021) 66 Cal.App.5th 163, 185.) The rap video evidence showed defendants' membership in criminal street gangs and their alliance and explained why defendants might act together to travel into Del Paso Heights to kill a Del Paso Heights Bloods affiliate.

The term undue prejudice in Evidence Code section 352 refers to evidence which has very little evidentiary impact and " ' "which uniquely tends to evoke an emotional bias against the defendant" ' . . . not the prejudice 'that naturally flows from relevant, highly probative evidence.' " (*People v. Padilla* (1995) 11 Cal.4th 891, 925, overruled

10

on other grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.) Although the jury may find the lyrics of GAP Shoota Gang and Feds Hit the City profane and violent, crimes against rival gang members were central to the attempted murder count because the People alleged the shooting of M.G. was gang-motivated, and Evidence Code section 352 does not make evidence inadmissible merely because it is highly damaging to the defendant. (*Olguin, supra*, 31 Cal.App.4th at p. 1373.) The lyrics were graphic but they were not more inflammatory than evidence of the underlying crimes and Detective Eaton's testimony about African American gangs in Sacramento. Further, in admitting the rap video evidence, the trial court said it would consider a limiting jury instruction upon defendants' request and the trial court instructed the jury that it may consider evidence of gang activity only to decide whether defendants acted with the requisite intent or whether defendants had a motive to commit the charged crimes; to evaluate a witness' credibility; or to consider the facts and information upon which an expert witness based his opinion. The trial court expressly admonished that the jury may not consider gang evidence for any other purpose. We presume the jury followed the trial court's instructions absent evidence to the contrary and none has been presented. (*Olguin, supra*, 31 Cal.App.4th at p. 1374.) Consistent with the trial court's admonition, the prosecutor told the jury the rap videos showed gang membership and gang motives. In addition, only two videos were shown to the jury. (Cf. *Coneal, supra*, 41 Cal.App.5th at pp. 961-963 [the prosecutor presented eight rap videos and an audio recording of a rap song].) At trial, Detective Eaton's direct examination testimony about the rap videos did not consume an inordinate amount of time, taking up about 23 out of approximately 148 pages of the reporter's transcript. Under these facts, Gi fails to demonstrate that the trial court abused its discretion under Evidence Code section 352 in admitting the rap video evidence.

Gi further urges that the rap video evidence was cumulative in view of the other gang evidence presented by the People. No bright-line rules exists for determining when

evidence is cumulative. (*People v. Williams* (2009) 170 Cal.App.4th 587, 611.) Application of the term must be reasonable and practical. (*Ibid.*) Here, the rap videos presented noncumulative evidence that all four defendants were allied and united against the Del Paso Heights Bloods. The GAP Shoota Gang video was also noncumulative evidence connecting Ackerson to 5545 Sky Parkway, apartment 139, where firearms and ammunition were seized, because a shirt like the one Ackerson wore in the video was found at that location. Defendants did not explain in the trial court and Gi does not explain on appeal how evidence of motive and intent was cumulative to other evidence in the case.

## II

Gi next argues the count 1 conviction must be reversed because it is based on an impermissible theory of conspiracy to commit attempted murder. Ackerson joins in this claim.

The People assert that Ackerson and Gi forfeited their appellate claim because it was not raised in the trial court. We will address the merits of the contention, however, because a claim that an instruction caused a conviction under an invalid legal theory need not be preserved by objection in the trial court. (*People v. Powell* (2021) 63 Cal.App.5th 689, 710 (*Powell*).)

In *People v. Iniguez* (2002) 96 Cal.App.4th 75 (*Iniguez*), another panel of this court held that conspiracy to commit attempted murder is a nonexistent offense. (*Id.* at p. 79.) "This is because the crime of attempted murder requires a specific intent to actually commit the murder, while [a conspiracy to commit attempted murder contemplates] . . . an ineffectual act. No one can simultaneously intend to do and not do the same act, here the actual commission of a murder." (*Ibid.*)

In this case, the trial court instructed the jury on uncharged conspiracy as a theory of liability for attempted murder pursuant to CALCRIM No. 416. But here Ackerson and Gi were not convicted of conspiracy to commit attempted murder, the offense found to be

12

a legal falsehood in *Iniquez*. (*Iniquez, supra*, 96 Cal.App.4th at p. 77-79.) Instead, they were convicted of attempted murder, and the jury found that defendants acted willfully and with deliberation and premeditation in committing the attempted murder of M.G. The convictions and findings are not based on an inconsistency in the required mental state.

Any error was harmless under any standard. The CALCRIM No. 416 instruction told the jury that to decide whether a defendant or another member of the conspiracy intended to commit attempted murder, the jury should refer to the separate instructions given on that crime. And the trial court instructed the jury, pursuant to CALCRIM No. 600, that to prove a defendant was guilty of attempted murder, the People must prove that the defendant had the specific intent to kill M.G. The trial court further instructed the jury on willful, deliberate and premeditated attempted murder, using CALCRIM No. 601. It told the jury that if it found a defendant guilty of attempted murder, it must then decide whether the People proved the additional allegation that the attempted murder was done willfully and deliberately and with premeditation. The trial court instructed, "The defendants act[ed] willfully if they intended to kill when they acted. The defendants . . . deliberated if they carefully weighed the consideration for and against the choice and knowing the consequences decided to kill. The [d]efendants acted with premeditation if they decided to kill before completing the act of attempted murder." In his closing statement, the prosecutor told the jury attempted murder required a finding of intent to kill. The prosecutor said defendants agreed to travel into rival gang territory to kill a rival gang member. He said defendants decided to kill and went hunting for a rival gang member. He argued defendants acted with premeditation. The convictions and jury findings are consistent with the focus of the prosecutor's closing argument that defendants made a plan to travel into rival gang territory to kill a rival gang member. (*Powell, supra*, 63 Cal.App.5th at p. 715 [prosecutor did not rely on the invalid theory].) In convicting defendants of premeditated attempted murder under the CALCRIM

13

Nos. 600 and 601 instructions given, the jury necessarily found that defendants acted with intent to kill M.G. On this record, any error in giving the challenged instruction is harmless.

III

Gi also argues that his count 1 conviction must be reversed because the trial court erred in denying the defense request to instruct on assault with a deadly weapon as a lesser included offense of attempted murder. Ackerson joins in the claim.

A trial court has an obligation to sua sponte instruct on every lesser included offense that is supported by substantial evidence. (*People v. Breverman* (1998) 19 Cal.4th 142, 154-155, 160, 162.) We review de novo a claim that the trial court failed to instruct on a lesser included offense. (*People v. Manriquez* (2005) 37 Cal.4th 547, 584.)

Gi concedes that assault with a deadly weapon is not a lesser included offense of attempted murder under the elements and accusatory pleading tests for determining whether an offense is a lesser included offense of a charged crime. He nevertheless urges that the count one charge of attempted murder includes the lesser offense of assault with a deadly weapon because count one contains section 12022.53 firearm use enhancement allegations. Gi's claim is contrary to Supreme Court precedent holding that enhancement allegations are not considered part of the accusatory pleading for purposes of defining or instructing on lesser included offenses. (*People v. Wolcott* (1983) 34 Cal.3d 92, 100-101; accord *People v. Boswell* (2016) 4 Cal.App.5th 55, 59-60; *People v. Bragg* (2008) 161 Cal.App.4th 1385, 1397-1399; *People v. Alarcon* (2012) 210 Cal.App.4th 432, 436 (*Alarcon*); *People v. Parks* (2004) 118 Cal.App.4th 1, 6.)

Gi acknowledges the *Wolcott* holding but, citing *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435] and *People v. Seel* (2004) 34 Cal.4th 535, claims *Wolcott* is no longer good law. Gi also says he raises the issue for possible review by the California Supreme Court or future federal review. The court in *Alarcon* rejected the

14

same claim made by Gi. (*Alarcon, supra*, 210 Cal.App.4th at pp. 436-439.) We do the same because *Apprendi* and *Seel* do not discuss whether sentence enhancement allegations may be considered in determining whether an uncharged crime is a lesser included offense of a charged crime. (*Alarcon,* at p. 437.)

IV

Citing *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), Gi next contends that the fines, fees and assessments imposed must be stayed because there was no finding that he had the ability to pay them.

Gi was sentenced on November 15, 2019, more than 10 months after *Dueñas* was decided. At the time of his sentencing hearing, there was authority for requesting an ability to pay hearing. (See, e.g., *Dueñas, supra*, 30 Cal.App.5th at p. 1160; *People v. Santos* (2019) 38 Cal.App.5th 923, 926; *People v. Kopp* (2019) 38 Cal.App.5th 47, 95-96, review granted Nov. 13, 2019, S257844.) Gi did not request such a hearing or object to the fines, fees and assessments imposed. He therefore forfeited his appellate claim.

V

Gi argues the cumulative effect of the above asserted errors warrants reversal.

"[A] series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error." (*People v. Hill* (1998) 17 Cal.4th 800, 844.) Gi has not demonstrated a series of trial errors or that he did not receive due process and a fair trial. We reject his claim that reversal is required because of cumulative errors.

VI

Gi further contends his count one sentence is unauthorized because the operative pleading did not allege that the attempted murder was willful, deliberate and premeditated.

Section 664, subdivision (a) provides, in pertinent part, " . . . if the crime attempted is willful, deliberate, and premeditated murder, as defined in Section 189, the

15

person guilty of that attempt shall be punished by imprisonment in the state prison for life with the possibility of parole. . . . The additional term provided in this section for attempted willful, deliberate, and premeditated murder shall not be imposed unless the fact that the attempted murder was willful, deliberate, and premeditated is charged in the accusatory pleading and admitted or found to be true by the trier of fact." The Attorney General concedes that the accusatory pleading did not allege that the attempted murder was willful, deliberate and premeditated, but asserts that Gi forfeited his appellate claim because he did not object to the pleading deficiency in the trial court.

In *People v. Houston* (2012) 54 Cal.4th 1186 (*Houston*), the trial court imposed an enhanced sentence pursuant to section 664 even though the indictment did not allege that the charged attempted murders were deliberate and premeditated. (*Id.* at p. 1225.) The California Supreme Court held that, under the facts of that case, the defendant forfeited his section 664 pleading deficiency claim. (*Houston,* at p. 1229.) The trial court had presented the parties with a preliminary draft of the verdict forms which indicated that the trial court would ask the jury to determine whether the attempted murders were willful, deliberate and premeditated. (*Id.* at p. 1226.) The trial court said it believed the prosecution intended to charge premeditated attempted murder and asked counsel to say something if the trial court was incorrect. (*Ibid.*) It also announced its intent to include deliberation and premeditation as a special finding on the attempted murder verdict forms. (*Ibid.*) After the close of evidence, the trial court instructed the jury to determine whether the attempted murders were willful, deliberate and premeditated. (*Ibid.*) The defendant did not object to the proposed verdict forms or instructions. (*Ibid.*) Under those circumstances, the Supreme Court concluded that the defendant had adequate notice of the punishment he faced and forfeited his section 664 claim. (*Houston,* at pp. 1227-1228.) The Supreme Court said that had the defendant raised a timely objection in the trial court, the trial court could have considered whether to permit the prosecution to

16

amend the indictment and whether to grant a defense request for a continuance of the trial. (*Ibid.*)

As in *Houston*, the operative information in this case did not allege that the attempted murder was willful, deliberate and premeditated, as required under section 664. However, Gi had adequate notice that the prosecutor intended to prove that the attempted murder of M.G. was willful, deliberate and premeditated and he did not object in the trial court on the grounds of a pleading deficiency or lack of notice nor did he request a continuance to meet an allegation of deliberation and premeditation.

Gi had more notice of the prosecution's plan to prove that the attempted murder was willful, deliberate and premeditated than the defendant in *Houston*. The trial court and defendants' trial counsel discussed the prosecution's theory that the attempted murder was willful, deliberate and premeditated before the start of the trial, in the context of a motion to admit gang evidence. Defense counsel did not object to an allegation that the attempted murder was willful, deliberate and premeditated. In his opening statement to the jury, the prosecutor argued, without objection from the defense, that the case was about the premeditated attempted murder of M.G. The trial court informed the parties, before the People rested, that it planned to give the CALCRIM No. 601 instruction on premeditation and deliberation. There was no objection from defendants. Had a defendant objected to presenting the issue of deliberation and premeditation to the jury, the trial court could have considered whether to allow the People to amend the amended information.

The trial court instructed the jury that if it found a defendant guilty of attempted murder, it must then decide whether the attempted murder was done willfully, deliberately and with premeditation. As in *Houston*, the jury made an express finding that the attempted murder was willful, deliberate and premeditated. (*Houston, supra*, 54 Cal.4th at p. 1226.) Gi did not object when the trial court referred to count one as willful, deliberate, premeditated attempted murder and imposed a sentence of seven years

17

to life for that conviction. Based on all of the above, we conclude that Gi forfeited his section 664 claim.

Gi asserts he did not need to object in the trial court to preserve his appellate claim because the life sentence imposed based on an unpleaded enhancement is unauthorized. The California Supreme Court has rejected the contention that imposing an unpleaded enhancement necessarily results in an unauthorized sentence. (*Anderson, supra*, 9 Cal.5th at pp. 961-962.)

Anticipating a finding of forfeiture, Gi raises an ineffective assistance of counsel claim. To establish ineffective assistance of counsel, a defendant must prove that (1) his trial counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficiency resulted in prejudice to the defendant. (*People v. Maury* (2003) 30 Cal.4th 342, 389 (*Maury*); *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674] (*Strickland*).) If a defendant makes an insufficient showing on either of those components, his ineffective assistance claim fails. (*People v. Holt* (1997) 15 Cal.4th 619, 703; *Strickland*, at p. 687.)

With regard to prejudice, "the record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citation.]" (*Maury, supra*, 30 Cal.4th at p. 389.) Defendant must show a reasonable probability of a more favorable result. (*People v. Ledesma* (1987) 43 Cal.3d 171, 217-218; *Strickland, supra*, 466 U.S. at pp. 693-694.)

Gi fails to establish prejudice because given its statements in discussing the pretrial motion and its charge to the jury, the trial court would have likely permitted the prosecution to amend the operative pleading to allege the willful, deliberate and premeditated enhancement. (See § 1009; *People v. Sawyers* (2017) 15 Cal.App.5th 713, 720-721.) We reject defendant's ineffective assistance claim.

Ackerson joins and adopts by reference the argument by Green-Geiger in a separate appeal (case No. C090722) that the prosecutor's failure to plead that the attempted murder was willful, deliberate and premeditated prevents the imposition of an enhanced sentence based on those findings. We do not discuss the claim because Ackerson fails to explain with citation to authority how the asserted claim by Green-Geiger resulted in error and prejudice as to Ackerson. (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 363-364.)

## VII

Ackerson asserts the abstract of judgment must be corrected to delete one of the five-year sentences for a section 667 prior serious felony enhancement because that was not part of the oral pronouncement of sentence.

At the sentencing hearing, the trial court imposed one five-year prison term for a section 667, subdivision (a) prior serious felony conviction enhancement. The abstract of judgment, however, shows two five-year section 667, subdivision (a) sentences. The Attorney General agrees this must be corrected.

Where there is a discrepancy between the oral pronouncement of judgment and the abstract of judgment, the oral pronouncement controls. (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.) The appellate court has authority to correct clerical errors in the abstract of judgment so that it comports with the oral pronouncement of judgment. (*Id.* at pp. 386, 389.) We will order the abstract of judgment be corrected to remove the five-year prison term pursuant to section 667, subdivision (a) on the abstract of judgment for Ackerson's indeterminate sentence.

## VIII

In supplemental briefing, Ackerson argues Assembly Bill No. 333, which amended section 186.22 effective January 1, 2022, applies retroactively to his case and the true findings for the section 186.22 enhancements must be reversed because the

19

evidence was insufficient to prove those findings under the amended section 186.22. Gi joins in the claim.

The Attorney General agrees that Assembly Bill No. 333's amendments to section 186.22 apply retroactively to Ackerson and Gi. However, according to the Attorney General, it is beyond a reasonable doubt that the jury would have found true the section 186.22, subdivision (b) enhancement allegations under the amended section 186.22 because there was overwhelming evidence that the predicate offenses commonly benefitted the gang and the benefit was beyond reputational benefit.

We agree with the parties that Assembly Bill No. 333's amendments to section 186.22 apply retroactively to this case. Section 186.22, subdivision (b) provides enhanced punishment for a felony committed for the benefit of, at the direction of or in association with a criminal street gang with the specific intent to promote, further or assist in criminal conduct by gang members. (§ 186.22, subd. (b).) Among other things, Assembly Bill No. 333 increased the threshold for the imposition of the gang enhancement, to defendants' benefit. (*People v. Lopez* (2021) 73 Cal.App.5th 327, 343-344 (*Lopez*).) Under the version of section 186.22 in effect at the time of Ackerson and Gi's trial, "pattern of criminal gang activity" was defined as "the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more of [specified] offenses, provided at least one of these offenses occurred after [January 1, 2008] and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons. . . ." (Stats. 2017, ch. 561, § 178 [former section 186.22, subdivision (e)].) But Assembly Bill No. 333 added the requirements that the predicate offenses used to establish a pattern of criminal gang activity must have "commonly benefited a criminal street gang, and the common benefit of the offenses is more than reputational." (Stats. 2021, ch. 699, § 4 [current section 186.22, subdivision (e)].) "Examples of a common benefit that are more than reputational may include, but

20

are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant." (Stats. 2021, ch. 699, § 4 [new section 186.22, subdivision (g)].)

The California Supreme Court recently held that the amendments to section 186.22 under Assembly Bill No. 333 apply retroactively to defendants whose judgments are not yet final on the amendment's operative date. (*People v. Tran* (2022) 13 Cal.5th 1168, 1207 (*Tran*).) Accordingly, Ackerson and Gi are entitled to the benefit of the amended section 186.22.

Although Detective Eaton testified about predicate offenses – i.e., four convictions against Manors gang members for unlawful possession of a firearm or carrying a concealed firearm – the prosecution did not present evidence that those predicate offenses commonly benefited a criminal street gang and that the common benefit of the predicate crimes was more than reputational, as required under Assembly Bill No. 333. Although the Attorney General argues there was overwhelming evidence that illegal possession of firearms commonly benefited the gang, they cite to evidence relating to a hypothetical shooting; the cited testimony does not refer to the predicate offenses. Further, the trial court did not instruct the jury that to find a pattern of criminal gang activity, the jury must find that the predicate offenses commonly benefited a criminal street gang and the common benefit of the offenses was more than reputational. Instead, the trial court told the jury the predicate crimes need not be gang-related.

Because there is no evidence the predicate offenses met the heightened requirements of Assembly Bill No. 333 and the jury was not asked to and did not make factual determinations now required under Assembly Bill No. 333, we will vacate the section 186.22, subdivision (b) enhancement findings against Ackerson and Gi and remand to matter so that the People may prove the applicability of the enhancements under the amended section 186.22. (*Tran, supra*, 13 Cal.5th at p. 1207; *People v. Montano* (2022) 80 Cal.App.5th 82, 104; *People v. Ramos* (2022) 77 Cal.App.5th 1116,

1128 (*Ramos*); *People v. Vasquez* (2022) 74 Cal.App.5th 1021, 1032-1033; *People v. Rodriguez* (2022) 75 Cal.App.5th 816, 823; *People v. Sek* (2022) 74 Cal.App.5th 657, 669; *Lopez, supra,* 73 Cal.App.5th at pp. 343-346.)

IX

In his second supplemental brief, Ackerson argues section 1109 applies retroactively to his case and requires reversal of his convictions for attempted murder, unlawful possession of a firearm, and unlawful possession of ammunition because the trial court erred in denying his motion to bifurcate the trial on the gang enhancement allegations and the error was prejudicial. Gi joins in the claim.

The Attorney General responds that section 1109 applies prospectively only and even if section 1109 applies to this case, any error in not bifurcating the trial of the gang enhancement allegations was harmless under the *People v. Watson* (1956) 46 Cal.2d 818 standard.

Assembly Bill No. 333 added section 1109, which mandates a separate trial of a section 186.22, subdivision (b) gang enhancement allegation if requested by the defense. (Stats. 2021, ch. 699, § 5 [§ 1190, subd. (a)].) Under section 1109, the question of the defendant's guilt of the underlying offense must be determined first. If the trier of fact finds the defendant guilty of the underlying offense, the trier of fact shall then decide the question of the truth of the section 186.22, subdivision (b) enhancement. (§ 1190, subd. (a).)

There is a split in authority among the Courts of Appeal regarding whether section 1109 applies retroactively. Although the California Supreme Court has not resolved the split, it recently concluded in a case that any error in failing to bifurcate was harmless. (*Tran, supra*, 13 Cal.5th at p. 1208.) We reach the same conclusion in this case.

Failure to bifurcate the trial of a gang enhancement allegation is not structural error. (*Tran, supra*, 13 Cal.5th at p. 1208.) It is also not error subject to review under the *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*) standard unless admission of the

22

gang evidence in the trial of the underlying offenses made the trial fundamentally unfair. (*Tran,* at pp. 1209-1210 [applying *People v. Watson, supra*, 46 Cal.2d 818 standard for state-law error to section 1109 error claim].)  Ackerson contends the *Chapman* standard applies because section 1109 created a liberty interest in having the jury decide guilt of the substantive offenses prior to the truth of the gang enhancement allegations.  But as we have explained, gang evidence was relevant and admissible to prove defendants' motive and intent on the day of the shooting.  The prosecutor's theory was that defendants, members of three different gangs, agreed to and carried out a plan to travel into rival gang territory to kill a rival gang member.  Gang evidence was also relevant to explain why witnesses were reluctant to cooperate with law enforcement officials (*Tran,* at p. 1210) and the significance of Strawberry Manor Park and the location of the shooting. Section 1109 does not preclude admission of gang evidence in a bifurcated trial if the evidence is relevant to the underlying offenses.  (*Ramos, supra*, 77 Cal.App.5th at p. 1132.)  Ackerson and Gi fail to demonstrate that admission of any gang evidence rendered their trial fundamentally unfair or violated a liberty interest created in section 1109.

Ackerson and Gi fail to show it is reasonably probable they would have obtained a more favorable result if their trial had been bifurcated.  (*Tran, supra*, 13 Cal.5th at p. 1210 [applying *People v. Watson*, *supra*, 46 Cal.2d 818 harmless error standard to section 1109 claim]; *Ramos, supra*, 77 Cal.App.5th at p. 1131 [same]; *People v. E.H.* (2022) 75 Cal.App.5th 467, 480 [same].)  This is because the evidence of Ackerson and Gi's guilt on the underlying offenses was strong.  Indeed, Ackerson and Gi do not challenge the sufficiency of the evidence supporting their convictions.

Even if some of the gang evidence would have been excluded in a bifurcated proceeding, Ackerson and Gi do not show that such evidence was inflammatory in comparison with evidence of the charged attempted murder.  Moreover, as we have explained, the trial court instructed the jury that it may consider gang evidence for limited

purposes only. We presume the jury followed the instruction absent evidence to the contrary and none was presented. (*Olguin, supra*, 31 Cal.App.4th at p. 1374.)

On this record, we conclude that even if section 1109 applies retroactively to Ackerson and Gi's case, defendants fail to show they were prejudiced by the failure to bifurcate the trial on the gang enhancement allegation.

## DISPOSITION

The gang enhancement allegation findings under section 186.22 as to Ackerson and Gi are vacated, and the matter is remanded to give the People an opportunity to retry the section 186.22 enhancement allegations under the law as amended by Assembly Bill No. 333, and for resentencing as appropriate. The judgments are otherwise affirmed. The trial court is directed to prepare amended abstracts of judgment, including an amendment on Ackerson's indeterminate sentence deleting the five-year prison term pursuant to section 667, subdivision (a), and to forward certified copies of the amended abstracts of judgment to the Department of Corrections and Rehabilitation.


                                        /S/
                                   MAURO, Acting P. J.

We concur:


    /S/
BOULWARE EURIE, J.


    /S/
HOCH, J.*

---

* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.